YOUNG, Respondent, v. RAILWAY MAIL ASSOCIATION, Appellant.

St. Louis Court of Appeals, June 11, 1907.

1. **ACCIDENT INSURANCE: Fraternal Beneficiary Societies.** An association of railway postal clerks which issued benefit certificates to its members, agreeing to pay them for loss of time resulting from accident, which had no ritualistic form of work, but admitted members by simply paying the required dues, was not a fraternal benefit association, but a straight accident insurance company.

2. ————: **Assignment of Obligation: By-laws of a Company Assuming Obligation of Another Company.** The holder of a benefit certificate in an insurance company, all of whose obligations were assumed by another company after the issuance of the cer-

tificate, was not bound by a by-law of the latter company which impaired his contract of insurance, where such by-law was passed after the issuance of his certificate and there was no agreement on his part to be bound by it.

3. ———: Notice: Waiver. Where the by-laws of an accident insurance society provided that in case of an injury to the holder of a benefit certificate he should "at once" notify the proper officer, the holder of such certificate after an accident failed to give such notice until a week had elapsed and the agent of the society then recommended the payment of the claim provided the insured was sound before the accident, this was a waiver of immediate notice.

4. ———: ———: Immediate Notice. "Immediate notice" means notice within a reasonable time, and where the holder of a benefit certificate in an accident insurance society did not realize the seriousness of an injury for which his certificate indemnified him, until a week after the accident which caused it, the notice given at that time was within a reasonable time.

5. ———: Evidence: Previous Condition of Health. In an action on an accident policy where the injury caused a hemorrhage of the lungs, evidence that the plaintiff on former occasions was obliged to lay off work on account of illness without specifying the character of the illness, was irrelevant.

6. ———: "External, Violent, Accidental Means:" "Accidental." An injury is "accidental" within the meaning of a policy of insurance providing indemnity for injuries resulting from "external, violent accidental means," when the effect produced is not the natural or probable consequence of the means which produced it; where a man was lifting a heavy mail sack to a position above his head thereby causing a rupture and hemorrhage of his lungs, whether this was accidental within the meaning of such a certificate was for the jury.

7. ———: ———: "External." Such injury was also caused by "external," violent means within the meaning of the certificate; where the cause is external it meets the condition of the policy' although the effect is internal.

8. ———: Assumption by One Company of the Liabilities of Another: Pleading. In an action on an accident insurance policy where the petition and the answer alleged that the defendant had assumed the obligations of another company, which had issued the certificate sued on, this made it unnecessary to prove that the particular policy sued on had been so assumed.

Appeal from Lawrence Circuit Court.— *Hon. F. C. Johnson*, Judge.

AFFIRMED.

*Bernard Greensfelder, Henry Brumback,* and *Charles L. Henson* for appellant.

(1) An injury resulting from an intentional and voluntary act, done in the usual and ordinary manner, and in the doing of which nothing unforseen, unexpected or unusual occurs, such injury cannot be said to have been effected through external, violent and accidental means, although the injury itself was unusual and unexpected. Fedar v. Assn., 107 Iowa 538, 78 N. W. 252, 43 L. R. A. 693; McCarthy v. Insurance Co., 8 Biss. (U. S.) 362; Niskern v. Brotherhood of Carpenters of America, 87 N. Y. Supp. 640; Cobb v. Accident Assn., 96 Ga. 818, 22 S. E. 976; Southard v. Assurance Co., 34 Conn. 574; Appel v. Insurance Co., 86 App. Div. 83, 83 N. Y. Supp. 238; Scarr v. Assurance Corporation, King's Bench Div. (1905), 1 K. B. 387; 1 American and English Annotated Cases, 787 and notes; 92 Law Times 128; Clidero v. Insurance Co., 29 Sc. L. 303. (2) When the laws of a benefit society are referred to in the certificate of membership, in clear and specific terms, and made a part thereof, the certificate, as well as the constitution, by-laws, rules and regulations must be considered as a whole in adjusting the rights of parties thereunder. Goodson v. Accident Assn., 91 Mo. App. 339; Laker v. Royal Fraternal Union, 95 Mo. App. 353; Hannum v. Waddell, 135 Mo. 153; Coleman v. Knights of Honor, 18 Mo. App. 194; Grand Lodge v. Elsner, 26 Mo. 114; Loyd v. Modern Woodmen of America, 113 Mo. App. 19; Relief Fund v. Tierney, 116 Mo. App. 447; Westerman v. Supreme Lodge, 196 Mo. 758; Grand Lodge v. Sater, 44 Mo. App. 445; Schule v. State Home Lodge, 63 Mo. App. 277; Ben. Assn. v. Bunch, 109 Mo. 560; Wallace v. Life Assn., 80 Mo. App. 102; Bacon on Benefit Soc., 6 Life Ins., secs. 69-81; Niblack on Benefit Societies, sec.

218. Foreign authorities: Britton v. Supreme Council, 46 N. J. Eq. 102; Lodge v. Knight, 117 Ind. 489; Lorcher v. Supreme Lodge, 72 Mich. 316; Lamont v. Legion of Honor, 31 Fed. 177; O'Brien v. Supreme Council, 176 N. Y. 597; Polk v. Life Assn., 137 Fed. 273; Grand Lodge v. Gandy, 53 Mo. App. 142, 63 N. J. Eq. 692.

*Edward J. White* for respondent.

(1) The defendant, as a non-resident accident association, not shown to have complied with the laws of Missouri, under its policy, payable not alone to the members of insured's family, but to his legal representatives, or substituted beneficiaries, insuring its members without initiation, or a ritualistic form of work, was not a fraternal beneficial association, in Missouri, but a straight accident insurance association. Baltzell v. Modern Woodmen, 98 Mo. App. 153; Moore v. Insurance Co., 112 Mo. App. 696; Hoffmeyer v. Muench, 59 Mo. App. 20; Jacobs v. Life Assn., 142 Mo. 49; Hartzberg v. Modern Brotherhood, and c., 110 Mo. App. 328; Shotliff's v. Modern Woodmen, 73 S. W. 326; Kern v. Supreme Council, 167 Mo. 471. (2) By-laws and constitution of a fraternal beneficial association, even, cannot be made retroactive, unless clearly so intended. Modern Woodmen v. Wieland, 109 Ill. App. 340. The constitution and by-laws of the original insurer, at the time existing, or such as it might subsequently adopt, were made parts of the contract of insurance, but not so another constitution and by-laws of another company, adopted after the contract of insurance was made and not shown to have been accepted or understood by the insured. Purdy v. Life Assn., 101 Mo. App. 91; Morton v. Supreme Council, 100 Mo. App. 76; Campbell v. American Ben. Club, 100 Mo. App. 249; Miller v. Tuttle (Kan.), 73 Pac. 88; Suess v. Supreme Council (La.), 34 So. 697. (3) An injury due to a voluntary lift, was held to be an "accidental injury," by the Kan-

sas City Court of Appeals, within the terms of a policy of insurance similar to that sued on in this case, in the case of Summers v. Fidelity Mutual Association, 84 Mo. App. 612; Fetter v. Fidelity & Casualty Company, 174 Mo. 256; Insurance Co. v. Schmaltz, 53 S. W. 51; Patterson v. Accident Co., 25 App. D. C. 46; Horsfall v. Insurance Co., 32 Wash. 132, 72 Pac. 1028; Wilkinson v. Insurance Co., 72 S. W. 1016; Pernonger v. Union Casualty Co., 37 So. 461; McGluckey v. Casualty Co., 80 Me. 251, 14 Atl. 13; Insurance Co. v. Schmaltz, 66 Ark. 588, 53 S. W. 49; Daily v. Assn. (Mich.), 57 N. W. 186; Insurance Co. v. Fleming, 65 Ark. 61, 44 S. W. 464; Wilson v. Assn., 53 Minn. 470, 55 N. W. 626; Rustin v. Accident Co., 58 Neb. 792, 79 N. W. 712, 46 L. R. A. 253; McCarthy v. Insurance Co., 8 Biss. 302; Accident Assn. v. Barry, 131 U. S. 100, 33 L. Ed. 60; Insurance Co. v. Schmaltz, 66 Ark. 588, 53 S. W. 49; Rustin v. Accident Co., 58 Neb. 792, 79 N. W. 712, 46 L. R. A. 253. (4) The defendant's denial of liability waived the necessity for notice of the injury, but if this had not been true, the notice given was both timely and sufficient. "Immediate notice is such reasonable notice as the circumstances would require." Paper Co. v. Fidelity Co., 104 Mo. App. 157, 78 S. W. 320.

BLAND, P. J.—On May 9, 1902, the National Association of railway postal clerks, a corporation, doing an accident insurance business in this State, issued its benefit certificate or policy of insurance to plaintiff, agreeing, among other things, to pay him the sum of fifteen dollars per week, not to exceed fifty-two consecutive weeks, for loss of time resulting from bodily injuries caused or produced "through external, violent accidental means, which shall wholly and continuously disable him from following the occupation of a railway postal clerk," in which occupation plaintiff was at the time engaged. Among other conditions of the policy

are the following: "That the above-named mem-
ber complies with all the laws, rules and regulations,
now governing the National Association of Railway
Postal Clerks and that the said member further agrees
to comply with all future laws that may hereafter be en-
acted while he shall claim membership under the certi-
ficate, all the before mentioned laws, rules and regula-
tions being declared to be material parts of this con-
tract." Afterwards, th National Association of rail-
way postal clerks, for a valuable consideration, trans-
ferred all its assets to the defendant Railway Mail Asso-
ciation, a corporation doing a similar business. The
latter company, for a valuable consideration, assumed
and agreed to pay the holders of policies or certificates
(including plaintiff) in the former company, whatever
sums might become due them under the terms of their
policies.

On April 29, 1905, plaintiff, while engaged in his
occupation of railway postal clerk, was injured through
(what is alleged in his petition) "purely an accidental
cause." The allegations are as follows: "While lifting
a heavy mail sack, in the performance of his duties as
such such postal clerk, plaintiff ruptured a blood vessel
on his right lung and so strained, pulled and injured the
veins, tendons and muscles connecting with said right
lung as to cause severe hemorrhages from the lung so
injured as aforesaid. That said injury was followed by
a swelling of the right breast and severe pain and ulcer-
ation of the lung and hemorrhages of blood from said
lung or blood vessels, as a result of which the plaintiff
was compelled to forego his duties as such railway
postal clerk, and to submit himself to medical treatment
and attention, for a total period of twenty-six weeks,
during all of which time he was unable to perform any
of his duties as such postal clerk, or to perform labor of
any kind." Plaintiff made proofs of loss and applica-
tion to defendant for the indemnity of fifteen dollars per

week. Defendant rejected the claim hence this suit to recover fifteen dollars per week for twenty-six weeks, the time plaintiff alleges he was incapacitated to work by reason of his injury.

The petition is in the usual form and alleges a compliance on the part of plaintiff with all the conditions of the contract of insurance, and with the constitution and by-laws of both companies. The answer was first a general denial and the following special defenses: First, that plaintiff's injury, "if any, was not a bodily injury effected through external, violent and accidental means," and for this reason plaintiff cannot recover; second, "that whatever disability, if any, which plaintiff may have received at the time alleged and while said certificate was in force and effect, such disability did not result wholly from such injury, as in the constitution and by-laws of the defendant provided," and for this reason plaintiff cannot recover; and third, "that the constitution and by-laws of the defendant at the time of the alleged injury mentioned in the petition provided that no benefit or sum whatever should be payable in any case whatsoever unless the accident alone should result in producing visible external marks of injury or violence suffered by the body of the member;" and that no external marks of violence were produced on plaintiff's body by the alleged injury, for which reason he cannot recover. Plaintiff recovered a judgment for three hundred and ninety dollars, from which defendant appealed in the usual way.

The evidence shows that at about eight o'clock a. m., on April 29, 1905, plaintiff and his helper were receiving and storing mail in a mail car in the city of St. Louis. A sack of second-class mail matter, weighing about one hundred and fifty pounds, was pushed into the door of the car. Plaintiff took hold of one end of the sack and pulled it into the car; his helper then took hold of the other end and the two made an effort to place

the sack in the stall. To do this, the sack had to be raised about six feet from the floor, and in raising it, plaintiff ruptured his right lung, became sick and in a few minutes commenced to spit blood. The hemorrhage was from his lungs, and his attending physician testified there was a lesion of his right lung; that the hemorrhage continued at intervals for several weeks, and on account of the injury, plaintiff was physicially unable to resume his occupation for a period of more than twenty-six weeks. The evidence tends to show that plaintiff had no lung trouble before his injury, and that he had entirely recovered at the time of the trial; that a rupture of the lungs in the circumstances related (by lifting) is a very unusual occurance and not to be expected from that sort of muscular exertion. Defendant offered in evidence its constitution and by-laws, which on objection made by plaintiff were excluded by the court. This ruling of the court is assigned as error.

1.  It is provided in section 6, article 15, of the Constitution and by-laws of defendant, that "no benefit or sum whatever shall be payable in any case whatsoever unless the accident alone results in producing visible external marks of injury or violence suffered by the body of the member." There were no visible external marks or injury on plaintiff's body and if the constitution and by-laws were admissible in evidence, and plaintiff is bound by the provisions of section 6, supra, he cannot recover, and the rejection of the constitution and by-laws was fatal error. It is shown by the evidence that defendant had no initiatory ceremony, and no ritualistic form of work; that the members were admitted into the association by simply paying the required amount of dues. The defendant association is therefore not a fraternal benefit association, within the provisions of the Act of March 8, 1897, but is a straight-out accident insurance company. [Kern v. Legion of Honor, 167 Mo. 471, 67 S. W. 252; Jacobs v. Omaha Life Ass'n, 142 Mo.

49, 43 S. W. 375; Moore v. Insurance Co., 112 Mo. App. 696, 87 S. W. 988; Herzberg v. Brotherhood, 110 Mo. App. 328, 85 S. W. 986; Baltzell v. Modern Woodmen, 98 Mo. App. 153, 71 S. W. 1071.] And the rights of plaintiff are to be determined by the contract of insurance, which provides, in effect, that plaintiff's right to participate in the benefit fund depend upon his compliance with the constitution and by-laws of the National Association. There is nothing in the record showing or tending to show that he, at any time, obligated himself to comply with the constitution and by-laws of the defendant association, and there is nothing to show that its constitution and by-laws are the same as were the constitution and by-laws of the national association at the time plaintiff became a member thereof. But conceding for the sake of the argument, that plaintiff was bound to comply with the by-laws of defendant, it is well settled law in this state that such an agreement does not bind the member to comply with by-laws adopted after the issuance of his certificate of insurance, if the subsequent by-laws in any way impair his contract of insurance, or impose upon him an additional burden. [Morton v. Supreme Council, 100 Mo. App. l. c. 91-2, 73 S. W. 259, and cases cited; Sisson v. Supreme Court of Honor, 104 Mo. App. 54, 78 S. W. 297; Zimmerman v. Supreme Tent of K. of M. of W., 99 S. W. 817.] That part of section 6, quoted above, alters the terms of the contract of insurance and impairs the contract by requiring additional proof of injury, to-wit, proof of the injury by external marks of violence upon the body of the assured. For the reason that plaintiff was not bound by this provision of the section, if it was error at all to exclude the constitution and by-laws, the error was harmless.

2. It is alleged in the answer that the by-laws provide, that in case of injury, plaintiff shall at once notify in writing the assistant treasurer to whom he pays

his dues and assessments, and that plaintiff failed to give such notice. Plaintiff's evidence shows he did not realize the seriousness of his injury, or that it would prevent him from following his occupation for a week or more, until about the first day of May, 1905, and that as soon as he realized the extent of his injury, to-wit, on May 2, 1905, he gave the required notice. The evidence also shows that proofs of loss were furnished and not objected to for the reason immediate notice of the injury was not given; on the contrary, the president of the St. Louis branch of the association recommended the payment of the claim, subject to the stipulation that the rupture could occur with the lungs in a perfectly healthy condition. It is therefore apparent that defendant either accepted the notice given as sufficient, or waived the time of giving it. [Winter v. Supreme Lodge K. of P., 96 Mo. App. 1, 69 S. W. 662.] Besides, immediate notice means notice within a reasonable time, and we think under the evidence, the notice was given in a reasonable time. No other provisions of the constitution or by-laws are pleaded as a defense, and for the reasons above stated, we hold defendant was not prejudiced by the exclusion of the constitution and by-laws of the order, conceding (which we do not) they were admissible in evidence as offered.

3. Defendant offered to prove that prior to plaintiff's injury, on several occasions, he had procured leave of absence, or rather leave to lay off work, on account of illness. This evidence, we think, was rightfully excluded, for it had no relevancy whatever to any issue in the case. Evidence of prior hemorrhages of the lungs, or other lung trouble, would have been competent, as such evidence would have tended to show the hemorrhages plaintiff had after the injury were not necessarily caused by a lesion of his lungs, but resulted from their diseased condition. No such evidence was offered.

4. At the close of plaintiff's evidence and again at

the close of all the evidence, defendant moved the court to grant the following instructions:

"1. The court instructs the jury that under the pleading and the evidence in this case you will return a verdict for the defendant.

"2. The court instructs the jury that inasmuch as it indisputably appears from the testimony of the plaintiff that he did not receive a bodily injury, through external, violent and accidental means, you will return your verdict for the defendant.

"3. The court instructs the jury that inasmuch as it indisputably appears from the evidence of the plaintiff that he did not at once notify, in writing, the assistant treasurer of the defendant to whom he paid his dues and assessments, of the injury pleaded in the petition, he cannot recover in this action and your verdict must be for the defendant."

The third instruction is disposed of by what is said in the second paragraph of this opinion. The first and second instructions are in the nature of a demurrer to plaintiff's evidence and to the evidence as a whole. They raised the question of whether or not the evidence as a whole is sufficient to warrant a jury to find plaintiff's injury resulted through "external, violent accidental means." It is contended by defendant that, "An injury resulting from an intentional and voluntary act, done in the usual and ordinary manner, and in the doing of which nothing unforeseen, unexpected or unusual occurs, such injury cannot be said to have been effected through external, violent and accidental means, although the injury itself was unusual and unexpected." In support of this contention, defendant cites Feder v. Iowa Traveling Men's Assn.; 107 Iowa 538; McCarthy v. Travelers' Ins. Co., 15 Fed. Cases, Case No. 8682; Niskern v. United Brotherhood of C. & J., 87 N. Y. Supp. 640; Cobb v. The Preferred Mutual Accident Ass'n., 96 Ga. 818; Southard v. Railway Passengers Assurance Co., 34 Conn. 574; Ap-

pel v. Aetna Life Ins. Co., 83 N. Y. Supp. 238; In re Scarr and The General Accident Assurance Corporation, 1 King's Bench Law Reports (1905) 387; Clidero v. Scottish Accident Ins. Co., 19 Session Cases 355; Fidelity & Casualty Co. v. Carroll, 5 L. R. A. (N. S.) 657.

In the Feder case (107 Iowa 538) the evidence showed that Feder was a consumptive and went to Denver, Colo., for his health. He had been in Denver about nine months. On the day of his death, he went to a window to close the shutters. A chair stood in front of the window, and he stood on his toes, and reached over the chair toward the shutters, and, as he did so, blood began to flow from his mouth, and he died in a few minutes. The cause of his death was due to a hemorrhage caused by a ruptured artery. On this evidence the court said: "The evidence would have authorized the conclusion that the rupture of the artery was not due to the disease from which he was suffering. There is no evidence that he fell, slipped, lost his balance, failed to catch the shutter when he reached for it, or that it moved at his touch more or less readily than he had expected it would move; in other words, there is no evidence whatever that anything was done or occurred which he had not foreseen and planned, excepting the rupture of the artery, and the consequences which resulted from it." Further on at page 541, it is said: "It is argued that the rupture of a blood vessel is not the usual result of an effort to close shutters; therefore, when it occurs, it is unusual, unexpected, and an accident. . . . Although a result may not be designed, foreseen, or expected, yet, if it be the natural and direct effect of acts voluntarily done, or of conditions voluntarily assumed, it cannot be said to be accidental."

In the McCarthy case (15 Fed. Cases, Case No. 8682) on an accident policy of insurance, where the death was alleged to have occurred by reason of the

rupture of a blood vessel, sustained while exercising with Indian clubs, it was held, "That if the deceased used the clubs for exercise in the ordinary way, and without the interference of any unusual circumstances, the injury was not accidental; but if there occurred any unforeseen accident or involuntary movement of the body which, in connection with the use of the clubs, brought about the injury, then such means were accidental and within the terms of the policy."

In the Niskern case (87 N. Y. Supp. 640) it was held: "The rupture of a blood vessel, caused by the lifting of a considerable weight, together with the fact that the person was at the time suffering with arterial sclerosis, a hardening of the blood vessels, was not an accident, within the meaning of that term, in a certificate of a beneficial association providing for indemnity in case of accidental injury."

In the Cobb case (96 Ga. 818) it was said: "Where an accident policy insured the person to whom it was issued 'against bodily injuries effected through external, violent and accidental means,' and on the trial of an action thereon, predicated upon the loss of an eye, it appeared from the evidence that the plaintiff, while in an emaciated and feeble condition, after safely alighting from a train, carried his baggage, weighing from sixty to eighty pounds, a distance of about fifty yards and 'injured himself in some way or other' in so doing, so that soon after putting the baggage down a defect in the vision of one of his eyes became apparent, which finally resulted in a total loss of sight as to that eye; and it also appeared that the plaintiff had not fallen, nor received a blow, or jar, or shock of any kind, and that there was nothing unusual in his manner of carrying the baggage or in his locomotion while so doing, no case for a recovery was made. Even if the plaintiff's injury was attributable to the carrying of the baggage, it was not effected

126 App—22

by 'external,' 'violent' or 'accidental' means in the sense in which these words are used in the policy."

In the Southard case (34 Conn. 594) the facts were, Southard jumped from the rear of a car and caused a partially developed rupture in his right loin, which laid him up for several weeks. At page 578, Shipmen, referee, in discussing the case said: "There was no accident, strictly speaking, in the means through which the bodily injury was effected. It would not help the matter to call the injury itself—that is, the rupture—an accident. That was the result, and not the means through which it was effected."

In the Appel case (83 N. Y. Supp. 238) it was held: "Under a policy providing that, if the insured's death result solely from bodily injuries effected through external, violent, and accidental means, a certain sum shall be paid; that, if such death result from such an accident while riding a bicycle, double that sum shall be paid; but that if death result from other causes the insurer shall not be liable—the insurer does not become liable on the death of the insured from septic peritonitis resulting from an inflammation of the appendix, caused by the regular movement of the 'psoas' muscle while the insured was riding his bicycle."

The Scarr case (King's Bench Reports, 387) was a suit to recover on an accident policy. The facts were as follows: "On the morning of December 26, 1903, he (the assured) was in the apparent enjoyment of good health and able to discharge the duties of his employment, which were duties requiring some bodily activity. In fact, however, on that day and for a considerable time prior thereto his heart was in a weak and unhealthy condition, although he did not know that fact. During the morning of December 26, being apparently in his usual state of health, he attempted to eject a drunken man from his master's premises, using some physical exertion for that purpose by pushing or pulling in order to

overcome the man's passive resistance. The effect of this physical exertion was to cause a strain on the assured's heart, and the increased work of the heart under this strain rendered it, owing to its weak and unhealthy state, incapable of recovering its ordinary condition when the immediate strain ceased, the consequence being that the heart began to dilate, and the dilation so set up was the cause of death. But for his exertions in attempting to eject the drunken man the assured might have lived a considerable time longer. A claim to receive the policy moneys having been made by the assured's personal representative: Held, that the injury which resulted in the death of the assured was not caused by 'accidental means' within the meaning of the policy, and the insurers were, therefore, not liable." At pp. 393-4, the court said: "The evidence shows that there was no intervening fortuitous cause. The injury to the heart, which I assume to be bodily injury, seems to me to have been caused by a violent exertion, and the violent exertion was intended and not accidental. There was no slip or fall or blow. He intended to push and pull, and he pushed and pulled. Apart from authority, I cannot find the means to be accidental. I proceed, therefore, to examine the authorities. The only English case that has any real bearing is Hamlyn v. Crown Accidental Insurance Co. 1 Q. B. 750. In that case the words of the policy were practically the same as here. The plaintiff was stooping forward to pick up a marble dropped by a child as it rolled from him. He stood with his legs together, separated his knees, leaned forward, and made a grab at the marble, and in so doing wrenched his knee. The contention of the plaintiff's counsel was that, as the plaintiff did not mean to get into a position in which he might wrench his knee, there was something accidental. The court held the contention sound. The plaintiff did not mean to wrench his knee, and that would not be the ordinary result of such an action. A.

L. Smith, L. J., says it was accidental, for getting into the particular position in which the injury would happen was not done on purpose. I think I should have come to the same conclusion. It was as if a man walking stumbled and sprained his ankle. He did not intend to stumble. The stumbling was accidental and not the necessary or likely result of walking. That would properly be called an accident. There was no weakness of the knee or other predisposing cause. Here, as I have said, Scarr intended to violently exert himself, and the injury to the heart followed as the natural consequence. He never got into any position which he did not intend. It seems to me very like the case of a man with a weak heart injuring it by running to catch a train. He intends to run. Nobody would call such an event an accident. No one would describe him as meeting with an accident."

In the Clidero case (reported in 19 Session Cases, p. 355) the insured in putting on his stocking felt something give way inside of him and immediately had great pain and began to swell up. He died of cardiac failure in a short time. A post-mortem examination revealed a displacement and obstruction of the colon, which the expert testimony showed might stop the action of the heart. The learned President, at page 360, said: "The man was putting on his stockings, and he felt something give way in his inside. The only external fact is his putting on his stocking, and in that of itself there is nothing either violent or accidental. But further, there is in the evidence no hint or suggestion that any misadventure occurred incidental to the putting on of the stockings (such as a slip or fall), or that anything external befell, except in accordance with the intention and by virtue of the volition of the deceased. Either, therefore, the movements involved in putting on the stockings caused the displacement of the colon, in which case the means causing the injury were not accidental or violent,

or the two things were unconnected, except in point of time."

In Fidelity and Casualty Co. v. Carroll (5 L. R. A. (N. S.) 657) it was held: "An injury received by making an intentional assault on another by striking him in the face with the fist is not by accidental means, within the meaning of a policy insuring against injuries received through such means."

In Smouse v. Traveling Men's Ass'n., 118 Iowa 436, Smouse recovering from a sickness was suddenly awakened with directions to dress quickly. He arose appearing somewhat dazed and confused, hurriedly attempted to remove his nightshirt over his head, and while his arms were raised, became entangled in the garment, and putting forth exertion, broke a blood vessel. His movements were held not involuntary so as to render the injury accidental.

There are many judicial definition of the term accident. Webster defines it to mean, "Literally, a befalling; an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance, contingency; often, an undesigned and unforeseen occurance of an afflictive or unfortunate character; a casualty or mishap." The Supreme Court of Indiana, in Supreme Council Order of Chosen Friends v. Garrigus, 104 Ind. 133, defined the term as used in the relief fund laws of a mutual benefit association, to mean simply "an event that takes place without one's foresight or expectation." Practically the same definition was given in Robinson v. U. S. Mut. Acc. Assn., 68 Fed. 825; in Lovelace v. Traveler's Protective Assn., 126 Mo. 104, 28 S. W. 877, and in the cases cited below. Accident assurance companies do business mostly with the common people, and the term "accident" as used in these policies should be construed most strongly against the companies, and be defined according to the ordinary and usual understanding of its signification.

"Any unusual and unexpected event attending the performance of a usual and necessary act," whether the act be performed by the party injured or by another, is ordinarily and usually understood to be an event which happened by accident. In the foregoing cases it seems to us a too strict and illiberal definition of the term was adhered to. At any rate they are not reconcilable with the general trend of the best considered American cases, which hold that accidental means are those which produce effects which are not the natural and probable consequences of the act. "An effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of such means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, is produced by accidental means." [4 Cooley, Briefs on the Law of Insurance, pp. 3156-7.] Joyce says an accident "may be an unusual event attending the performance of a usual and necessary act, or an unusual effect of a known cause." [Joyce on Insurance, sec. 2863.]

In the leading case of United States Mutual Accident Ass'n. v. Barry, 131 U. S. 100, the evidence showed that Barry and two other persons jumped from a platform four or five feet high to the ground, they jumping safely and he jumping last. He soon appeared ill, and vomited, and could retain nothing on his stomach, and passed nothing but decomposed blood and mucous and died nine days afterwards. It was contended that no accident was shown. Mr. Justice Blatchford writing the opinion of the court, in discussing this contention, at page 121, said: "It must be presumed not only that the deceased intended to alight safely, but thought that he would. The jury were, on all the evidence, at liberty to say that it was an accident that he did not. The court properly instructed them that the jumping off the plat-

form was the means by which the injury, if any was sustained, was caused; that the question was, whether there was anything accidental, unforeseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted on the ground; that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected;' that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means."

In North American Life Ins. Co. v. Burroughs, 69 Pa. 43, it was held that exertion causing unforeseen and unusual effects, such as the dilation of the heart, was accidental.

In Horsfall v. Pacific Mutual Life Ins. Co., 32 Wash. 132, plaintiff's husband was called upon to assist in carrying a bar of iron into the shop where he worked. The bar weighed from three hundred and fifty to four hundred pounds. Horsfall picked up one end of the bar and another man picked up the other end. Horsfall by reason of his position was at some disadvantage in picking up his end of the bar. The bar was carried to the anvil in the shop by the two men. When it was laid down Horsfall complained of being sick and turned pale, perspired profusely, grew cold and had to quit work. He went home, called a physician, who pronounced the trouble a violent dilation of the heart causing hypertrophy, from which Horsfall died. It was urged that the evidence failed to show the deceased met his death by accident of any kind. The court held that the effects of the lifting did not take place according to the

usual course of things, and approvingly quoted the following definition of injury or death by accident from 2 May, Insurance (4 Ed.), sec. 514, to-wit: " 'Death from any unexpected event, which happens as by chance, or which does not take place according to the usual course of things.' So a sprain of the muscles of the back, caused by lifting heavy weights in the course of business, is injury by accident or violence occasioned by external or material causes operating on the person of the insured."

In Nax v. Travelers' Ins. Co., 130 Fed. 985, it was held that death resulting from a self-inflicted knife cut, made by the insured while trimming a corn, which was followed by blood poisoning, is one from "accidental, external, and violent" means, within the meaning of an accident policy.

In Standard Life Ins. Co. v. Schmaltz, 66 Ark. 588, the deceased ruptured a blood vessel of his stomach in catching and lifting a cylinder head. It was held there was evidence to sustain the finding of the jury that death was accidental.

In Atlanta Accident Ass'n v. Alexander, 104 Ga. 709, the deceased, a hale, hearty man, whose occupation was that of a blacksmith and who was accustomed to using a heavy sledge hammer, on one occasion in striking a slanting blow, he suddenly felt a severe pain in the lower part of his abdomen. The injury proved to be a rupture producing hernia, which injury resulted in a few days in death. Held that the evidence warranted the jury in finding death was accidental.

In Rodey v. Travelers' Ins. Co., 3 N. M. 543, the insured took an ordinary dive from a plank into six or seven feet of water, causing an injury or a rupture of the tympanum of his ear. It was held the injury was accidental.

In Wilkinson v. Travelers' Ins. Co., 72 S. W. (Tex.) 1016, the insured was injured while helping to bring a

log into the camp of a party of hunters for the purpose of making a fire, he being one of the party. Held that the injury was accidental.

In McGlinchey v. Fidelity & Casualty Co., 80 Me. 251, the facts were as follows: "Whilst a person, who was insured under an accident policy, was driving upon a public street, his horse became frightened at an unsightly object on the street and ran away, without upsetting the carriage or coming in contact with anything before he was brought under control by the driver. But such person was, apparently, greatly endangered at the time, and suffered so severely, either from fright produced thereby, or from some strain caused by his physical exertion in restraining the horse, that he died within about an hour afterwards. Held that the death may be considered as having ensued from bodily injuries effected through external, violent and accidental means."

In Pervanger v. Union Casualty & Surety Co., 37 South. (Miss.) 461, it was held: "The declaration on an accident policy insuring 'against loss effected, solely, directly and independently of all other causes, by bodily injuries sustained through external, violent and accidental means,' alleging that assured's death was caused from bodily injuries to his lungs or stomach, or the rupture of some blood vessel, caused by being strained in lifting or handling some heavy substance, and the said substance, while being so lifted or handled, fell against or struck assured, causing said injury, is sufficient."

In American Accident Company v. Reigart, 94 Ky. 547, it was held: "A policy of insurance must be liberally construed in favor of the insured, and where the words are without violence susceptible of two interpretations, that which will cover the loss must in preference be adopted.

"The death of a person caused by a piece of beefsteak passing into the windpipe in eating is a death received through 'external, violent and accidental means'

within the meaning of an accident insurance policy, restricting the right of recovery to cases of death from such means."

Blood poisoning resulting from an abrasion of the toe by the shoe was held accidental, in Western Commercial Travelers' Ass'n v. Smith, 85 Fed. 401. So was blood poisoning resulting from the use of a hypodermic needle, in Bailey v. Interstate Casualty Co., 8 App. Div. (N. Y.) 127. Rupture of a blood vessel caused by a sudden wrench of the body was held to be accidental in McCarthy v. Travelers' Ins. Co., 15 Fed. Cases, Case 8682.

In Summers v. Fidelity Mut. Aid Ass'n, 84 Mo. App. 605, a "hostler's helper" in a railway shop, while lifting a truck "gave down" and soon died by reason of hernia plainly showing visible marks on his person. Held that death was accidental within the provisions of a policy which insured him against death by external violent and purely accidental means, of which there should be visible marks upon his person.

The evidence, especially that introduced by the defendant, shows that the rupture of a blood vessel in plaintiff's right lung was not a natural or probable effect of the lift plaintiff was making at the time he received the injury; and there is no evidence that plaintiff had a hidden disease of the lungs, such as tuberculosis; on the contrary, the fact that the hemorrhages ceased and his lungs healed, according to the expert evidence, is proof that his lungs were sound. However, to fall within the terms of the policy, the injury must have been caused not only by accidental means but also by external violent means. Death caused by the sting of an insect was held in Omberg v. U. S. Mut. Accident Ass'n, 101 Ky. 303, to be by external and violent means; and death by fright was held in McGlinchey v. Fidelity & Casualty Co., supra, to be by external and violent means. Cooley says, "It is only necessary that the

cause of the injury or death should be external to the person, though it acts internally," and this text is supported by a number of the authorities cited, supra. On the evidence and on the great weight of authority in this country, we think the plaintiff made a clear prima facie case and that the question as to whether or not his injury was caused by "external, violent and accidental means" was for the jury.

4. Complaint is made of the following instruction given for plaintiff:

"The jury are instructed that if they believe, from the evidence in this case, that at and prior to the injuries to the plaintiff, that he was the holder of a certificate of membership, or policy of insurance in the National Association of Railway Postal Clerks, and that at the time of his said injury, the liability for all accidental injuries thereunder were assumed or undertaken by the defendant and that the plaintiff John W. Young, on the twenty-ninth day of April, 1905, was accidentally injured while lifting heavy mail sacks, in the performance of his said duties as a railway postal clerk, whereby he sustained such violent accidental injury as to be externally visible upon his person and which injuries, independent of all other causes totally disabled him from performing service as a railway postal clerk or from following any other employment, for the period of twenty-six weeks from the date of said injury and that the plaintiff gave the defendant notice, in writing of the particulars of said injury and furnished the defendant with proof thereof, within the time provided for by the policy of the defendant then your verdict will be for the plaintiff in such sum as will compensate him for the full period of such disability, at the sum of fifteen dollars per week."

It is contended that there is no evidence that defendant assumed the liabilities of the National Company, which issued the certificate sued upon. It is al-

leged in the petition and also alleged in three separate paragraphs of the answer, that "before the day of the alleged injury mentioned in the petition, defendant assumed all the liabilities, if any, of said National Association of railway postal clerks upon said certificate," mentioned (the one sued on) but assumed such liabilities, if any, subject to the provisions of the constitution and by-laws of the defendant in force and effect at the time such liabilities, if any, should accrue. These allegations dispensed with proof of the assumption alleged in the petition, and the burden was on defendant to introduce some law of the association showing that plaintiff's case was excepted from the assumption. No such by-law or provision of the constitution was offered in evidence.

No reversible error appearing, the judgment is affirmed. All concur.