# ELIZABETH A. WRIGHT, Respondent, v. ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA, Appellant.

**St. Louis Court of Appeals, March 2, 1915 and April 6, 1915.**

1. ACCIDENT INSURANCE: Construction of Policy: "Accidental Means" Defined. "Accidental means," within an insurance policy insuring against "bodily injury effected through external, violent and accidental means," are those that produce effects that are not the natural and probable consequences of the act.

2. ————: Prerequisites to Recovery: Proof. Proof of an accident is essential to a recovery under a policy insuring against bodily injury effected through external, violent and accidental means.

3. ————: ————: ————. In a suit on an accident insurance policy, proof that death resulted from a ruptured artery would not, standing alone, authorize a recovery, where the evidence established that ruptured arteries frequently occur from natural causes, apart from accident.

4. ————: ————: ————. In a suit on an accident insurance policy, for accidental death, where the evidence discloses that the death could have resulted from a natural, as well as an accidental, cause, it devolves on plaintiff to show with reasonable certainty that the latter was the cause of death.

5. EVIDENCE: "Opinion" Defined. In the law of evidence, an "opinion" is an inference or conclusion drawn by a witness from facts, some of which are known to him and others assumed, or drawn from facts which, although lending probability to the inference, do not evolve it by a process of absolutely necessary reasoning.

6. ————: Inference from Inference: Presumptions. Presumptions may not be predicated upon other presumptions, nor inference piled upon other inferences, in support of a verdict.

7. ACCIDENT INSURANCE: Sufficiency of Evidence: Inferences. In a suit on an accident insurance policy, for accidental death which had taken place while insured was sawing upwards through planking, in a cramped position, on a hot day, physicians testified that the appearance of insured was that of one who had died from a ruptured artery. *Held*, that a verdict could not be based on such testimony, since such a finding would require a further inference that the ruptured artery resulted

from accident, based on the expert's inference that death resulted from a ruptured artery, which would violate the rule that an inference cannot be established by, nor predicated upon, another inference.

Appeal from Lincoln Circuit Court.—*Hon. B. H. Dyer,* Judge.

REVERSED.

*L. F. Sater* and *R. L. Sutton* for appellant.

(1) The burden of proof was upon the plaintiff to establish the fact that the death of William N. Wright was cauesd by bodily injury, effected through violent, external and accidental means, and that this alone caused his death. Shanberg v. Fid. & Cas. Co., 158 Fed. 1; Natl. Masonic Assoc. v. Shryock, 73 Fed. 774; Stanton v. Trav. Ins. Co., 78 Atl. 317; Smith v. Railroad, 200 Fed. 553; Ill. Com. Men's Assoc. v. Parks, 179 Fed. 794; White v. Ins. Co., 95 Minn. 77; Searles v. Railroad, 101 N. Y. 661; Com. Men's Assoc. v. Fulton, 79 Fed. 423; Kasten v. Interstate Cas. Co., 99 Wis. 73; Keen v. N. E. Acc. Assoc., 161 Mass. 149; Hastings v. Trav. Ins. Co., 190 Fed. 258; Natl. Assoc. &c. v. Scott, 155 Fed. 92; Laessig v. Travelers Pro. Asso., 169 Mo. 272; Travelers Ins. Co. v. McConkey, 127 U. S. 661. (2) Where the evidence is as consistent with a cause of death not accidental, as with an accidental cause, the verdict should be for the defendant. Carnes v. Iowa State Trav. Men's Assoc., 106 Ia. 281; Merritt, Admr. v. Pref. Acc. Assoc., 98 Mich. 338; Louisville Gas Co. v. Kauffman, 105 Ky. 101; Trav. Ins. Co. v. Selden, 78 Fed., 288; Warner v. Railroad, 178 Mo. 134; Coin v. Talge Lounge Co., 121 S. W. 1; Vernon v. Ia. State Trav. Men's Assoc., 138 N. W. 695; Smith v. Pullman Co., 138 Mo App. 246. (3) The evidence and all reasonable inferences deducible therefrom, fail to prove the case of the respondent, and the case should be re-

versed on the ground that the greater weight of the eivdence is in favor of the appellant. P. C. C. & St. L. Ry. Co. v. Scherer, 205 Fed. 356; Patton v. Railroad, 179 U. S. 658; Asbach v. Railroad, 70 Ia. 248; Dozier v. Fid. & Cas. Co., 46 Fed. 446. (4) There is a difference between an accident and accidental means, and the plaintiff cannot recover without showing that the means of the alleged injury, to which she seeks to attribute the death of William N. Wright, were accidental. Joyce on Ins., sec. 2863; Barry v. Mut. Acc. Assoc., 23 Fed. 712; Payne v. Frat. Acc. Assoc., 119 Ia. 342; Schmid v. Ind. Trav. Men's Acc. Assoc., 42 Ind. App. 483; Cobb v. Pref. Mut. Assoc., 96 Ga. 818; McGlother v. Prov. Mut. Acc. Assoc., 89 Fed. 685; Westmoreland v. Pref. Acc. Ins. Co., 75 Fed. 244; Fedar v. Assurance Co., 107 Ia. 358. (5) Verdicts must have evidence to support them and must not be founded on mere theory or conjecture. Ward v. Aetna Life Ins. Co., 92 Neb. 51; Boeck v. Modern Woodmen of Amer., 143 N. W. (Ia.) 1000; Reidhead v. Skagit Co., 17 Pac. 1118; Barry v. U. S. Mut. Acc. Co., 153 Fed. 717; U. S. v. Ross, 92 U. S. 281; Manning v. Ins. Co., 100 U. S. 695; Railroad v. Fulgham, 181 Fed. 91; Perkins v. Railroad, 193 Fed. 219; 22 Am. & Eng. Ency. of Law (2 Ed.), p. 1236; 1 Starkie on Ev. 57; Morris v. Railroad, 10 Ill. App. 389; State v. Hallen, 146 S. W. 1171.

*Avery, Young, Dudley & Killam* for respondent.

NORTONI, J.—This is a suit on a contract of accident insurance. Plaintiff recovered and defendant prosecutes the appeal.

Plaintiff is the widow of the insured, William N. Wright, and the benficiary named in the policy. It is stipulated in event the insured suffered "bodily injury effected through external, violent and accidental means which alone and independent of all other causes should occasion death, immediately, or within six months from

the happening thereof,'' defendant would pay plaintiff, the beneficiary, $5000 on account of such death.

The important question for consideration relates to the sufficiency of the evidence to reveal that the insured came to his death through accidental means, as nothing definite and certain touching this matter is shown by direct evidence. Plaintiff's husband was sixty-three years old at the time of his death. He was a traveling salesman by occupation, but temporarily engaged in making some repairs on the residence of Mrs. Moore. While in a kneeling posture and using an ordinary handsaw, he fell over and died within a moment or two thereafter. The task which the insured was performing at the time was, no doubt, a more or less difficult one and entailed a considerable strain of the muscles, but there is no direct evidence that his death resulted from accidental means, and this matter is to be ascertained, if at all, through inference solely. The insured, in doing some repair work on the residence of Mrs. Moore, was operating an ordinary handsaw with a view of removing a pine weather board about five-eights of an inch in thickness and a baseboard in the rear of it about twenty inches above the ground on the outside of the building. He was engaged at a place adjacent to a bay window, where the free area for the work was more or less restricted. Imediately in the rear of the baseboard, through which the insured was driving the saw, stood an ordinary two-by-four studding, to which it was nailed, and immediately in the rear of this was a ʋrick wall. Plaintiff's husband was engaged in the act of sawing, but driving the saw upside down—that is, with the teeth uppermost—through the pine weather board and the baseboard, about one inch thick, to which it was nailed. The teeth of the saw were cutting into the studding immediately behind and the end of the saw blade picked into the brick wall some two to four inches beyond. The insured appears to have been in a more or less cramped position and on

his knees while performing this task, and the situation was such as to require him to drive the saw with short strokes.

The day was a warm one—that is, during a heated spell, September 27th,—the hour about noon, and it is said he had been engaged some twenty minutes in thus operating the saw with its teeth uppermost. While thus occupied, the insured fell over and expired within two or three minutes thereafter. His grandson, Roy Wright, came to his aid immediately, but there is no evidence that the insured spoke a word. The grandson says, in describing the condition of the insured at the time, which was probably within a minute, or it may be two, after he was stricken, that "his mouth was open and a stare on his eyes, and his face was a pallid color, and he kind' a gasped like he wanted to say something or was choking, and he moved one arm slightly." Some ten or fifteen minutes after the occurrence, Dr. Smith, the family physician, arrived and says he found life extinct at the time, also "the face was very pale, he had the pallor of death and his face and jaw and mouth bore the evidence of a condition of congestion."

The evidence tends to prove that the insured was a strong, robust man, more than six feet in height, and enjoyed good health; while there is evidence, too, to the effect that he had been poorly of late and suffered a severe attack of headache only a short time before. There is no evidence as to the cause of the death of the insured, other than that to be found in the opinion of the scientific witnesses—that is, the medical men—who testified in the case. In other words, there was no post-mortem examination held, and if the death occurred from the rupture of an artery, such is not revealed in the case by direct evidence. No mark on the body is detailed in evidence, other than the pale and pallid condition of the face and the congested appearances about the mouth, and one witness mentions a congested condition appearing about the back of the

neck and head. There was no effusion of blood from any portion of the body, and, as above stated, no autopsy was had with a view of discovering the true cause of death.

However, the expert medical witnesses say that death evidently resulted from the rupture of an artery, and that this was no doubt superinduced by the strain and over-exertion incident to applying the handsaw on a hot day in a cramped position through the weather board, the baseboard, and into the studding beyond, by means of the short stroke, with the saw cutting upward rather than in the natural and usual way. The physicians all say that they do not know positively that any blood vessel was ruptured in the body of the insured, and touching that matter express an opinion only. Only one of the physicians who testified saw the body and that was Dr. W. P. Smith. The other expert witnesses testified on hypothetical questions propounded. The expert witnesses say that, in their opinion, the insured died from the rupturing of a blood vessel near one of the vital centers, and that such was occasioned through increased blood pressure, due to exertion and the strained position or exertion in sawing in a strained position. Dr. Smith and others expressed the opinion also that the death of the insured resulted from the rupture, in their opinion, of the coronary artery. However, as before said, all of the witnesses say that they did not know as a fact that an artery was ruptured.

If it were shown as a fact in the case—that is, by direct evidence—that the deceased suffered the rupture of an artery from the strain incident to the task he was pursuing, it may be the judgment could be sustained, for it is said that accidental means are those which produce effects which are not the natural and probable consequences of the act. In other words, "An effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably antici-

pated from the use of such means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, is produced by accidental means.'' [Young v. Railway Mail Ass'n, 126 Mo. App. 325, 342, 103 S. W. 557; Beile v. Travelers' Protective Ass'n, 155 Mo. App. 629, 135 S. W. 497; 4 Cooley's Briefs on Insurance, 3156, 3157.] But here there is no accident shown by the legitimate evidence introduced, and there must be an accident revealed before a recovery may be allowed as for an injury resulting from accident. [See Laessig v. Travelers' Protective Ass'n, 169 Mo. 272, 69 S. W. 469.]

But it is argued that it is competent to receive expert evidence in matters of this character, and the several witnesses for plaintiff attribute the death of the insured to the rupture of an artery and this will suffice, for obviously it was not anticipated as a result of the act of driving a handsaw which he was performing at the time. But though the witnesses so say, they each and all testify as well that they had no positive informa-. tion touching the matter of a ruptured artery. This being true, it is essential, then, to find through inference alone that the insured suffered a ruptured artery. This inference by which the ruptured artery is said to be ascertained is based upon the fact of the pallid and congested condition appearing about the face and head of the insured, the sudden death which overcame him, and the temporary strain he underwent in the labored effort of driving the saw.

But although it be conceded that deceased came to his death from a ruptured artery, this will not suffice to authorize a recovery as for accident, because such frequently occurs, as other evidence in the case reveals, from natural causes alone and aside from accident entirely. Then, too, if the rupture of the artery resulted from one of two causes, one of which is within the terms of the policy—that is, accidental means—and the other not—that is, a natural cause—it is incumbent on

the plaintiff to show to a reasonable certainty by competent evidence that the cause stipulated against—in this case, the accident—was at least an active agent in producing such result. [Warner v. St. Louis, M. R. R. Co., 178 Mo. 125, 134, 77 S. W. 67; Goodes v. Order of United Com. Trav. of America, 174 Mo. App. 330, 156 S. W. 995.]

But it is said, though such be true, it is to be inferred on the facts and circumstances and from the opinion of the expert witnesses that the artery in the instant case was ruptured as a result of the strain incident to the work being performed by insured and, therefore, it occurred through accidental means. But this argument goes beyond the facts shown in the direct evidence and reckons with inference on inference as though such were competent. Such a mode of arriving at a conclusion of fact, it is said, is inadmissible. No inference of fact may be reliably drawn from premises which are so highly uncertain. It is not to be questioned that "In the law of evidence, opinion is an inference or conclusion drawn by a witness from facts some of which are known to him and others assumed, or drawn from facts which, though lending probability to the inference, do not evolve it by a process of absolutely necessary reasoning." [See Black's Law Dictionary.] Therefore, it is obvious that, in order to establish a right to recover, sufficient facts must be detailed in evidence to afford legitimate inferences, and it will not suffice to establish a fact in the case by drawing an inference from other facts and then undertake to establish still another fact by utilizing the fact first established, through inference alone, as a basis for a further inference of fact. In other words, as is frequently said, presumption may not be raised upon other presumptions nor inference piled upon other inferences, in support of a verdict. [United States v. Ross, 92 U. S. 281; Hamilton v. Kansas City Southern R. Co., 250 Mo. 714, 157 S. W. 622; Glick v. Kansas City, etc. R.

Co., 57 Mo. App. 97, 104; Richmond v. Aiken, 25 Vt. 324; McAleer v. McMurray, 58 Pa. St. 126; 1 Rice on Evidence, section 34; Lawson's Presumptive Evidence, Rule 118, p. 652; Whitesides v. Chicago, B. & Q. R. Co., 186 Mo. App. 608, 172 S. W. 467.]

In order to find that the insured came to his death through accidental means, the jury essentially employed inference, for there is no direct evidence of the fact that he suffered a ruptured artery, and having inferred this much, it inferred, too, by resting another inference thereon, that such ruptured artery was occasioned through accidental means rather than from natural causes by the extraordinary blood pressure incident to the strain under which William N. Wright labored at the time. Although the first inference was a legitimate one, the second was not, for it was not based on competent matter of fact. Such being true, the verdict rests upon mere conjecture rather than on matter of fact deduced from the evidence.

The judgment should, therefore, be reversed. It is so ordered. *Reynolds, P. J.*, and *Allen, J.*, concur.

## ON MOTION FOR REHEARING.

NORTONI, J.—It is earnestly argued in support of the motion for a rehearing that the judgment in this case is in conflict with the case of Young v. Railway Mail Ass'n, 126 Mo. App. 325, 103 S. W. 557 and Fetter v. Fidelity & Casualty Co., 174 Mo. 256, 73 S. W. 592, in that it denies opinion evidence of the physicians the probative force accorded to such evidence in those cases. If the cases referred to are similar in respect of this matter to the question considered here, we have found ourselves unable to perceive such to be true. In point to require discrimination in the opinion. In the deed, those cases were not considered sufficiently in Young case, the plaintiff survived the accident and sued

on the policy for the weekly indemnity stipulated during the time he was disabled. It appears that he was injured by rupturing a blood vessel in his lung in the labor attending an effort to lift a heavy mail pouch several feet above his head. At the time, he was suddenly seized with a hemorrhage from the lung and spit blood. To these facts he testified himself on the stand, and described the strain incident to the lift which occasioned the hemorrhage. Having thus established a physical injury by positive and direct testimony, the evidence of physicians was received, tending to prove it resulted from an accidental, rather than a natural, cause. Obviously that case is to be distinguished from this one, for here there is no positive and direct evidence of an injury to Mr. Wright, the decedent.

In the Fetter case, it appears that Fetter, the assurd, was engaged in an endeavor to close a window with a stick. The stick became fastened and he slipped and fell against a table standing near, so as to inflict an injury in the region of the kidney. In order to treat the injury, an incision was made by the physician in the back of the insured and a ruptured kidney disclosed. The ruptured kidney was, therefore, revealed as a fact in the case and not through opinion or inferences. It appeared, too, that the kidney was diseased in a measure, and opinion evidence was received as to whether the ruptured kidney was occasioned from the injury received by the fall against the table or as a result of the disease. Obviously that case is not in point here, for there was the positive and direct testimony concerning the ruptured kidney, which was disclosed on the investigation through the incision in the back of the patient, made the day after the injury and before his death.

Though opinion evidence was utilized in those cases and the jury permitted to draw and reckon with an inference of fact, such inference so drawn and utilized was not an inference upon an inference, but rather

the first inference from the established fact in the case. In the Young case, the positive and direct evidence disclosed a rupture of a blood vessel, while in the Fetter case the positive and direct evidence introduced established a ruptured kidney. The rupture having been thus established in each instance by positive and direct evidence, it stood as a fact disclosed in the case, and then the inferences thereafter employed rested upon such established fact.

Here, in the instant case, there is no positive and direct evidence that Mr. Wright, the assured, suffered a rupture of an artery, and the evidence to that effect rests entirely upon evidence which, as above said, authorizes the jury to do no more than infer that death resulted from a rupture of an artery. Indeed, the evidence of the physicians is but inference on their part and, therefore, a conclusion. Having ascertained the ruptured artery through utilizing first the inference or opinion of the physicians that deceased suffered a ruptured artery, it appears that a second inference is employed in the process of arriving at the verdict, to the effect that such ruptured artery resulted from accidental means, rather than from a natural cause. Obviously a judgment resting upon inference piled upon inference may not be sustained.

The motion for a rehearing should be overruled.