SUSAN GLICK, Respondent, v. THE KANSAS CITY, FORT SCOTT AND MEMPHIS RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, March 5, 1894.

1. **Negligence:** CONDUCING CAUSE: INFERENCES. If an inference has no immediate connection with, or relation to, established facts from which it is made, it is too remote. This rule is applied in this cause, and is held to prohibit an inference that the injury sued for was caused by the negligence complained of.

2. **Practice, Appellate:** UNWARRANTED INFERENCES BY JURY. Appellate courts will draw with a firm hand the line between tangible evidence and reasonable and legitimate deductions on the one hand, and mere conjecture or speculation on the other.

*Appeal from the Wright Circuit Court.*—HON. ARGUS COX, Judge.

REVERSED AND REMANDED.

*Wallace Pratt* and *J. C. Cravens* for appellant.

There is no evidence that the alleged negligence of the defendant was the cause of the injury sued for. *Perkins v. Railroad*, 103 Mo. 52; *Hudson v. Railroad*, 101 Mo. 34; *Brown v. Railroad*, 20 Mo. App. 222; *Railroad v. Frick*, 11 Atl. Rep. 627; *Beal v. Athens*, 81 Mich. 536; *People v. Rockwell*, 39 Mich. 503; *Smith v. County Court*, 11 S. E. Rep. 1. When the facts are undisputed, the question as to whether a certain act is the proximate cause of the injury is one of law for the court.

*J. P. Nixon* for respondent.

BOND, J.—The plaintiff sues as the widow of Daniel Glick for injuries resulting in his death, caused by the alleged carelessness of defendant in erecting and maintaining crossings and approaches thereto, where its railroad and spur track run across and over a public highway known as the Springfield and West Plains road, in Texas county, in this state. The answer of defendant was a general denial and a plea of contributory negligence. There was a trial and verdict rendered in favor of plaintiff for $1,000, from which defendant prosecutes this appeal.

The evidence shows that the crossing in question is formed at the town of Grab, in Texas county, by the

intersection of the roadway and a spur track of the defendant's line with a wagon road, called the Springfield and West Plains road. At the points of intersection the railroad runs east and west, and the wagon road runs north and south.

It is conceded that the crossing of the main track by the wagon road is in good condition. It is also conceded that the crossing of the spur track is in bad condition near the outside of the southern rail of the spur, by reason of an offset, or drop-down, of probably eighteen inches. It appeared that this might be avoided by driving a little further to the east, but there would still be a considerable offset. About forty-five feet in the line of the wagon road, and south of the spur crossing, was a ledge of rocks, six or eight inches high, crossing the wagon road, and about thirty feet south of this ledge of rocks, and west of the wagon road, was a chincapin tree.

On the day of the accident causing the death of the plaintiff's husband, he had been engaged in delivering posts at a yard on the east side of the wagon road, and south of the crossing of the wagon road with defendant's spur track. He had in the forenoon delivered one load, and about 3 o'clock in the afternoon he drove to Earney's store with a second load of posts, where the posts were inspected and counted by the son of the purchaser. He thereupon drove off down the road and across the railroad. He was seen sitting on his wagon-load of posts between the main track and the spur. In a few minutes thereafter his team ran away, and he was seen near the wagon road, near some posts which had been spilled from his wagon, at a point about seventy-five feet southeast of the spur crossing.

Plaintiff's witness, Lewis Sanders, did not see the accident. This witness and Mr. Earney went to the assistance of Mr. Glick. He was skinned in several

places and cut and bruised, and appeared to be badly hurt. This witness also testified:

"Q. Now if you saw any mark on the ground leading from the spur to where you found him, state to the jury what it was. A. I could not tell what made the marks. Apparently something had dragged along the ground somewhere about thirty or thirty-five feet from the spur.

"Q. How close did you trace it to the spur? A. I didn't trace it.

"Q. Didn't you try to trace it? A. I never thought about that.

"Q. How close was it to the spur where you did trace it? A. I said about thirty or thirty-five feet.

"Q. From where you first saw Glick get up, how far toward the spur did you trace this trail? A. I guess between eight and ten feet from where it started to where he was on the south."

This witness, on being recalled by plaintiff, testified in substance that the indications on the road of something being dragged were thirty or thirty-five feet south of the spur crossing and between it and the ledge of rocks; that the indication of something being dragged was visible thence and over the ledge of rocks up to the point where Mr. Glick was found after the accident; that the last he saw of Mr. Glick, before the accident, was when he was passing on his wagon between the main track and the spur track; and that he did not see him again until he was hurt.

The evidence for the defendant was to the effect that no posts fell out of Mr. Glick's wagon until after it had crossed the ledge of rocks; that about eight or ten feet southeast of the ledge of rocks several posts were found on the ground; that there was no indication of any mishap to the team or wagon before the passing of the ledge of rocks; that there was no indi-

cation that anything had been dragged at any point between the rocks and the spur; and that the appearance of things indicated that the team had started to run away southeast of the rocks and nearly opposite the chincapin tree.

The defendant also introduced Mrs. Jacob Hanley, who testified, to wit:

"Am the wife of Jacob Hanley, and only knew Daniel Glick when I saw him. I saw him as he drove up with a load of posts in front of the store. He was driving a two-horse wagon. He had a load of what appeared to be fresh peeled posts. It had rained some that morning on up until about ten or eleven o'clock. It was about three or four o'clock in the afternoon when I saw him. I was standing in the east door of my house, and saw him drive on down across the main track and over the spur and down the hill to the ledge of rocks. When he got there, as one wheel of his wagon dropped off the rock, he fell right over and fell off just over the ledge of rock. Some of the load fell off at the same place, and the team there ran away and scattered the rest of the load all around there.

"Q. Did any of his load fall off before he fell off? A. No, sir; he fell off first, and then his load fell off. I saw him slip and kept watching him.

"Q. Do you know where the chincapin tree is? A. Yes, sir.

"Q. Where did he fall off with reference to that tree? A. Between the tree and the rock.

"Q. Nearer the tree or nearer the rock? A. Nearer the rock than the tree. I saw Glick's horses prancing a little between the main track and the spur, but they did not run off nor did anything happen, until they went over the ledge of rocks; there they ran away."

Cross-examined: "My house was north of the public road, and west of the postoffice only a short

distance. I was standing in the east or dining room door, and saw the accident. That door fronts right towards the railroad crossing. I was watching him as he drove down the road; had no particular object in watching him. He went over the track, and went over the spur all right. If he had fallen off at the crossing, I could have seen him. Young Mr. Glick came to my house not long after the accident, and I had some talk with him in regard to it.

"Q. I will ask you if, some time in August, after the accident, you didn't tell Mr. Glick at your house that his father fell off the wagon just as it crossed over the spur? A. No, sir.

"Q. Didn't you tell Mrs. Glick, in the presence of Mrs. Robertson, last October, that Mr. Glick fell off as he crossed the railroad track? A. No, sir; I told them at that rock, right in between the two wheels just after he got over that rock."

The point at which this witness stood, while observing the accident, was five hundred and eighty-six feet distant.

The son of plaintiff testified that Mrs. Hanley had made a former statement to him, to the effect that his father fell out of the wagon just as it crossed over the spur.

The evidence tended to show that at the time of the accident the deceased was riding upon a load of freshly peeled posts which were very slippery, contained in a wagon having an open frame; that they were not bound by any chain or otherwise, and that there was nothing to keep them from slipping forward or backward in going up or down hill.

The only evidence in this record, which is relied on by the respondent to prove that the runaway took place before the wagon of the deceased reached the rocks in the public road, is derived from the testimony of the

witness for the respondent, who states that, when he came to the rescue of the deceased, he found him at a point south of the ledge of rocks, between it and the chincapin tree, about thirty feet further south; that, in looking at the appearance of the road, he saw some indications of a dragging thereon; that he did not attempt to trace this dragging, but that it was thirty or thirty-five feet south of the crossing of the road by appellant's spur track. All the other testimony in the case, including· that of an eye witness, tends to show that the runaway began after the wagon of the deceased had reached the ledge of rocks. This theory is corroborated by the appearance of the posts which fell from the wagon, the first of these having fallen about eight feet south of the ledge of rocks and thence scattered in a southerly direction.

If, as against this evidence and the presumptions arising from the attendant circumstances, the jury took the view that the team broke away at the spur crossing and before reaching the ledge of rocks by reason of the defect on the south line of the spur track, then they not only excluded from consideration all the evidence and circumstances adduced by the appellant, but they also rested their finding (that the defect on the south line of the spur crossing was the proximate cause of the runaway and the consequent injuries to the deceased) upon the mere circumstance that, at a point thirty or thirty-five feet south of this defect, the public road showed some indications of some dragging thereon. In other words, this circumstance (indications of dragging on the road) seems to have sufficed in the minds of the jury to prove that it was caused by a runaway team, and that the runaway was caused by a defect in the public road thirty or thirty-five feet from where the appearance of dragging was noticed.

To reach this conclusion the jury must have

inferred: *First.* That it was the person of the deceased which was dragged. *Second.* That the dragging was caused by a runaway team. *Third.* That this runaway was caused by a defect in the south line of appellant's crossing at a point of thirty or thirty-five feet distant from the place where the indications of dragging were observed.

The law is that a valid presumption must be based upon a fact, and not upon inference or upon another presumption. If the presumed fact has no immediate connection with, or relation to, the established fact from which it is inferred, it is regarded as too remote. 1 Rice on Evidence, p. 53, sec. 34. Lawson on Presumptive Evidence, p. 569, rule 118. Or, as was said by Chief Justice REDFIELD: "Presumptions must always rest upon acknowledged or well established facts, and not upon presumptions." *Richmond v. Aiken*, 25 Vermont, 324; *McAleer v. McMurray*, 58 Penn. St. 126; *U. S. v. Ross*, 92 U. S. 283.

"The proximate cause of an event must be understood to be that which, in a natural and continuous sequence, unbroken by any new cause, produces that event, and without which that event would not have occurred. Proximity in point of time or space, however, is no part of the definition. That is of no importance, except as it may afford evidence for or against proximity of causation. That is the proximate cause, which is most proximate in the order of responsible causation." *Hudson v. Railroad*, 101 Mo. 35.

The ultimate fact, indispensable to respondent's recovery in this cause, is a showing that the runaway was caused by the defect at the south line of the crossing of appellant's spur track by the public road. It was entirely competent for respondent to establish this fact either by direct or indirect evidence. The evidence adduced for that purpose in this case is indirect or

circumstantial. No witness testifies to having seen the beginning of the runaway, until after the wagon had crossed the ledge of rocks in the public road which was outside of appellant's right of way.

The ledge of rocks might naturally have caused the slippery posts loaded on the wagon of deceased to fall forward on the horses and thus caused their fright, or might have thrown deceased from the wagon when it passed over them. The fact that he was found eight or ten feet south of the ledge of rocks is undisputed, and it is also undisputed that at that point some posts had been thrown to the ground from the wagon. The natural presumption from these established facts is that the ledge of rocks furnished the occasion for the fright of the team and the consequent injuries to the deceased.

In order to assume that the defect at the spur track was the cause of the runaway in question, all the natural inferences arising from the foregoing facts must be ignored, and it must be assumed upon two circumstances: *First.* That there was defect at the spur crossing. *Second.* That there was some indication thirty or thirty-five feet south of that defect of a dragging; that therefore the thing dragged was the body of Daniel Glick, and that it was caused by a preceding runaway, which latter was caused by the said defect at the spur track crossing distant as aforesaid.

It is clear that this deduction is not only violative of the rules of law inhibiting the piling of inference upon inference and presumption upon presumption, but it looks to a remote cause which has been broken by a new cause (ledge of rocks), and therefore is not according to the definition above given the proximate cause of the injury in question.

It is with reluctance that appellate courts interfere with the province of juries in passing upon questions of fact. "Whenever, from all the facts and circum-

stances in evidence, a jury may, without doing violence to the dictates of reason and common sense, infer a given fact on account of its known relation to the fact proved, the court should not interpose its own different conclusion.   But while this is correct, the due protection of property rights demands that the court should draw the line with a firm hand between tangible evidence and reasonable, legitimate deductions and mere conjecture or speculation." 31 Mo. App. 126.

We are unable to discover in the present record any logical relationship between the presumption, on the part of the jury, of causation of the injury in question by reason of the defect in the south line of the spur crossing of appellant's track, and all the facts and circumstances in evidence.

Our conclusion is, therefore, that the verdict in this case should be vacated.   The judgment herein is reversed and the cause remanded.   All concur.