MIRIAM H. PHILLIPS v. TRAVELERS INSURANCE COMPANY OF HARTFORD, Connecticut, Appellant.

Division Two, June 3, 1921.

1. **ACCIDENT INSURANCE: Burden of Proof.** The burden is on plaintiff, in a suit on an accident insurance policy against bodily injuries effected directly and independently of all other causes, through external, violent and accidental means, to show that the insured accidentally received such injuries and that they caused his death directly and independently of all other causes.

2. ———: **Inference from Fall.** The presence of a fresh bruise upon the insured's forehead will authorize the jury to infer a fall; but it does not necessarily follow that such fall was accidental, where there is positive and uncontradicted evidence that the insured was in a diseased condition and that a cerebral hemorrhage took place, and the fall may as readily be attributed to the hemorrhage as to an accident.

3. ———: ———: **Accident: Proximate Cause: Inference Upon Inference.** It is not sufficient that because of a fresh bruise upon the insured's forehead an inference may be drawn that he fell and that the fall was accidental, there being no eye witnesses; in order to permit a recovery on an accident policy, a further in-

ference that the fall was the proximate cause of his death must be indulged, and that inference cannot be allowed, for that would be equivalent to establishing a fact by building inference upon inference.

4. ———: ———: Cerebral Hemorrhage. The blood pressure of insured, sixty years of age, had become high. In the evening he visted some friends, who resided in the third-story of an apartment, and dined with them. Something after eight o'clock he bade them goodnight and started down the two flights of stairs. A few minutes later he was found on his knees at the foot of the stairs, holding a door knob and trying to raise himself in that way, his only words being, "My eye, my side; don't try to lift me." He then lapsed into apparent unconsciousness, was removed to a hospital and died in about four hours. There was a slight bruise or abrasion on his forehead near the right eye. A post-mortem examination showed no injury to the brain or its coatings, but did reveal a severe hemorrhage in the brain; and a later autopsy tended to show arterial sclerosis in an advanced stage, enlargement of the muscles of the heart and chronic Bright's disease, but no evidence of injury to the skull or the brain or the membranes covering the brain. *Held*, that the bruise on the forehead does not exclude the hemorrhage as the cause of the fall, and the undisputed evidence being that cerebral hemorrhage caused his death and there being no evidence that external violence caused injury to the brain or brain covering or the hemorrhage, the inference that the fall was caused by accident and that it was the proximate cause of his death is purely speculative, and a demurrer to the evidence should have been sustained.

5. ———: Inference Upon Inference. The rule that inference cannot be builded upon inference to establish a definite and ultimate fact necessary to be established in order to sustain a verdict, applies to actions on accident insurance policies.

Appeal from St. Louis City Circuit Court.—*Hon. Moses Hartmann*, Judge.

REVERSED.

*Jones, Hocker, Sullivan & Angert* for appellant.

(1) This insurance policy was an Illinois contract, because each renewal was a new contract. Grocery Co. v.

Fidelity Co., 130 Mo. App. 430; Stokel v. Heywood, 1 Ch. Div. (Law Rep. 1897) 459; Palmer v. Ins Assn., 128 N. E. (Ill.) 501. (2) The burden was on the plaintiff to prove that death was due to accidental means. Laissig v. Protective Assn., 169 Mo. 272; Brunswick v. Ins. Co., 213 S. W. (Mo.) 48. (3) The unexpected result of an intended act is not "accidental means." Riley v. Acc. Assn., 152 N. W. 617; Acc. Assn. v. Barry, 131 U. S. 121; Maryland Casualty Co. v. Spitz, 246 Fed. 817; Rock v. Travelers Ins. Co., 172 Cal. 462; Smith v. Travelers Ins. Co., 219 Mass. 147; Life & Acc. Co. v. Schmaltz, 66 Ark. 593; Atlanta Acc. Assn. v. Alexander, 104 Ga. 711; Newman v. Ry. Acc. Assn., 15 Ind. App. 33; Ludwig v. Acc. Ins. Co., 130 Minn. 510; Shoyer v. Life & Acc. Ins. Co., 68 N. H. 577. (4) A finding that death was the result of bodily injuries effected through accidental means cannot be reached in this case but by an inference based upon an inference, or a presumption based upon a presumption, which is not permissable. Yarnell v. Kansas City Ry. Co., 113 Mo. 580; Swearingen v. Wabash Ry. Co., 221 Mo. 644; Hamilton v. Kansas City Ry. Co., 250 Mo. 714; Atherton v. Ry. Mail Assn., 221 S. W. (Mo.) 756; Wright v. United Commercial Travelers, 188 Mo. App. 457; Whitesides v. Ry. Co., 186 Mo. App. 619; United States v. Ross, 92 U. S. 283; Globe Indemnity Co. v. Gerisch, 163 Ill. 625; Keefer v. Life Ins. Co., 201 Pa. 448. (5) Where under the evidence it is uncertain whether death was due to an accidental injury or to disease, the plaintiff cannot recover. Warner v. Railroad Co., 178 Mo. 134; State ex rel. Bush v. Sturgis, 221 S. W. 91; Atherton v. Ry. Mail Assn., 221 S. W. 756; Ins. Co. v. Murray, 90 S. E. 620; Transylvania Casualty Co. v. Allen's Admr., 209 S. W. 44; Carnes v. Traveling Men's Assn., 106 Iowa, 281. (6) Death from accident aggravated by pre-existing disease, or from pre-existing disease aggravated by accident is not death from "accidental means, independent of all other causes." (a) Under

the Illinois decisions, whose rules control this case. Crandall v. Casualty Co., 179 Ill. App. 330; Robinson v. Ins. Co., 192 Ill. App. 475; Moore v. Assn., 166 Ill. App. 38. (b) Under the accord of American judicial utterance. Natl. Masonic Assn. v. Shryock, 73 Fed. 755; Casualty Co. v. Shields, 155 Fed. 54; Casualty Co. v. Morrow, 213 Fed. 595; Travelers' Ins. Co. v. Fulton, 79 Fed. 423; Commercial Men's Assn. v. Parks, 179 Fed. 794; Aetna Life Ins. Co. v. Ryan, 255 Fed. 483; Acc. Ins. Co. v. Patterson, 213 Fed. 595; Postal Clerks' Assn. v. Scott, 155 Fed. 92; Stokely v. Fidelity Co., 193 Ala. 90; Stanton v. Travelers' Ins. Co., 83 Conn. 708; Binder v. Natl. Masonic Assn., 127 Iowa, 25; Aetna Life Ins. Co. v. Bethel, 140 Ky. 609; Thomas v. Fidelity Co., 106 Md. 299; Jiroch v. Travelers' Ins. Co., 145 Mich. 375; White v. Life and Acc. Ins. Co., 95 Minn. 77; Ward v. Aetna Life Ins. Co., 85 Neb. 471; Aetna Life Ins. Co. v. Dorney, 68 Ohio St. 15; Maryland Cas. Co. v. Glass, 29 Tex. Civ. App. 159. (7) The insurance was against death by accident alone, and not against death due to accident and existing disease. Under such a policy there can be no inquiry into proximate cause, where both such causes contribute. White v. Life & Acc. Ins. Co., 95 Minn. 77; Commercial Travelers' Ins. Co. v. Fulton, 79 Fed. 423; Commercial Men's Assn. v. Parks, 179 Fed. 794; Aetna Life Ins. Co. v. Ryan, 255 Fed. 483; Crandall v. Casualty Co., 179 Ill App. 330.

*Fordyce, Holliday & White* for respondent; *John S. Lord* and *Wilbur B. Jones* of counsel.

(1) The trial court properly refused motions at the close of plaintiff's case and at the close of all the evidence to direct the jury to find a verdict for defendant. (a) That physical infirmity may be a necessary condition to the accidental result does not deprive an injury of its distinction of being the sole producing cause, under a policy insuring against death only from bodily injuries effected directly and independently of all other causes

through external and accidental means. Campbell v. Aetna Life Ins. Co., 222 S. W. 778; Fetter v. Fidelity Co., 174 Mo. 256; Beile v. Protective Assn., 155 Mo. App. 629; Driskell v. Ins. Co., 117 Mo. App. 362; Goodes v. United Com. Travelers, 174 Mo. App. 330; Hooper v. Ins. Co., 166 Mo. App. 209; Greenlee v. Casualty Co., 192 Mo. App. 303; Wright v. United Com. Travelers, 188 Mo. App. 457; Baehr v. Union Casualty Co., 133 Mo. App. 541; Ry. Acc. Assn. v. Coady, 80 Ill. App. 563; Fessenden v. Travelers Ins. Co., 205 Ill. App. 108; Continental Casualty Co. v. Lloyd, 165 Ind. 52; Hall v. Acc. Ins. Co., 16 Ga. App. 66; Thornton v. Travelers Ins. Co., 116 Ga. 121; Fidelity & Casualty Co. v. Meyer, 106 Ark. 99; Modern Woodmen v. Shyrock, 54 Neb. 250; Mfgrs. Acc. Co. v. Dorgan, 58 Fed. 945. The fall was the proximate cause of Mr. Phillips' death, and any disease of his organs that may have been found was the remote cause, or rather a condition   Cases above cited. Plaintiff made out a prima-facie case by showing that Mr. Phillips had a fall, that a bruise was found upon his forehead thereafter, and that death was caused by a cerebral hemorrhage due to an arterial rupture. Whether he first fell and ruptured an artery which produced the cerebral hemorrhage, or the hemorrhage occurred first and caused the fall, were questions of fact for the jury. Cases above; Moon v. Commercial Travelers, 96 Neb. 65; Taylor v. Acc. Assur. Corp., 208 Pa. 439. (b) The evidence was amply sufficient to submit the issue to the jury as to whether or not Mr. Phillips had a fall which produced the arterial rupture, or the fall was caused by the rupture and the consequent cerebral hemorrhage. The fact that he was found in a fallen position at the foot of the stairs struggling to regain his feet; that he complained of pain in his side and eye, and that thereafter a bruise was found over his eye, and he vomited, made a prima-facie showing that the bruise and the vomiting were due to accidental means. U. S. Mutual Acc. Assn. v. Barry, 131 U. S. 111; Lamoreux v. Ill. Comm. Men's

Assn., 212 Ill. App. 263; Acc. Ins. Co. v. Fielding, 35 Colo. 19; Cronkhite v. Ins. Co., 75 Wis. 116; Lickleider v. Iowa Assn., 166 N. W. 363; McEwen v. Life Ins. Co., 129 Pac. 598; MacDonald v. Met. St. Ry. Co., 219 Mo. 468. (3) As the defendant alleged in its answer that Mr. Phillips died from the disease of arterio-sclerosis, the burden was on the defendant to prove it. Fetter v. Fidelity & Casualty Co., 174 Mo. 269; Beile v. Protective Assn., 155 Mo. App. 644; Anthony v. Mercantile Assn., 162 Mass. 354. (4) From the facts and circumstances appearing in evidence in this case the accidental character of the fall is clearly proven. Taylor v. Acc. Assur. Corp., 208 Pa. 439. When plaintiff showed in addition to the facts above stated, that Mr. Phillips' arteries had been tested and found strong enough to withstand a certain pressure, that they would not rupture within a few hours under a lesser pressure while walking downstairs, and that a fall and the injuries received would account for the necessary sudden increase of blood pressure, plaintiff went beyond what the above cases hold is sufficient to make out a prima-facie case.

DAVID E. BLAIR, J.—This is a suit by the beneficiary on a policy of accident insurance. It is admitted that said policy insured Milton C. Phillips, therein and herein referred to as the "insured," against bodily injuries effected directly and independently of all other causes, through external, violent and accidental means, and that in case of death the principal sum, with accrued accumulations, amounted to $7,500, was in full force and effect at insured's death and was payable to plaintiff, the respondent here, if she is entitled to recover under the terms thereof. The death of said insured occurred at Chicago, Illinois, on August 2, 1916. The policy was issued to insured in 1904 while he was a resident of the State of Wisconsin. He moved to Chicago about 1913, and consent of defendant to such removal was evidenced by a rider attached to said policy of insurance. Plain-

tiff is the daughter of insured, and was a resident of Ohio at the time the case was tried.

Insured was a man about sixty years of age at the time of his death. He had been engaged in the practice of law in Wisconsin, and had moved to Chicago to engage in business with his sons in that city. For some reason, stated by some of the witnesses to be on account of failing health, insured had been taking a vacation during the summer months of 1916, and had largely given up active office work and had taken up outdoor exercises, including golf.

There is some evidence that his blood pressure had become high. On the evening before his death he visited friends in Chicago, a Mr. and Mrs. Vaughan, had dined with them and afterwards remained an hour or two visiting and chatting with them. The Vaughans lived in a third-story apartment, and insured had climbed two flights of stairs to reach their apartment. About 8:30 he started to leave, and the Vaughans bade him goodnight at the top of the stairs leading to their apartment. Mrs. Vaughan suggested to her husband, after insured had started away, that he get his hat and go with him. She then went out on the porch and, failing to observe insured go out on the street below, became alarmed and followed her husband down the stairs leading up to their apartment. At the foot of the same and on a landing she found her husband bending over the insured, and sat down beside him on a step and directed her husband to summon assistance. The only words spoken by insured, as shown by the testimony, were, "My eye, my side; don't you try to lift me." He then lapsed into apparent unconsciousness. Mr. Vaughan testified that he found insured on his knees on the landing, holding the door knob and trying to raise himself in that way, with his hat and newspaper on the floor. He was carried up stairs to the apartment of the Vaughans and physicians attempted to treat him there. His sons were also summoned, and soon thereafter he was removed to the hospital, where he died about four hours after he

was stricken. Some of the witnesses testified to a slight bruise or abrasion on the forehead of the insured in the region of his right eye.

A post-mortem examination on the body of the insured was made by a Dr. Reinhardt, coroner's physician for Cook County. This post-mortem extended only to opening the skull and examining the brain. It showed no injury to the skull or to the brain, but did reveal a severe hemorrhage in the brain. The body was then shipped to Wisconsin for burial, where it was exhumed about twenty-six days later. An autopsy was performed thereon by Dr. Wells of Chicago. The testimony of the doctors performing and attending this autopsy tended to show the presence of arterio-sclerosis in an advanced stage, enlargement of the muscles of the heart and chronic Bright's disease, and that there was no evidence of injury to the skull or the membranes covering the surface of the brain or the brain itself. Dr. Wells testified that he looked for and observed no bruise on the forehead.

The trial below resulted in a verdict for plaintiff in the sum of $8,568.75, that sum representing the face of the policy, with admitted accumulations and interest from September 30, 1916. After unsuccessful motion for a new trial, the defendant appealed.

The above constitutes only a general outline of the facts. Such further facts as are necessary to a complete understanding of the issues involved in the case will be outlined more extensively in their proper place in the opinion.

A number of assignments of error are made by appellant and urged as ground for reversal of the judgment below. We will only consider the demurrer at the close of plaintiff's evidence and at the close of all the evidence, since our conclusion thereon disposes of the case.

A careful study of the evidence offered by plaintiff in the light of the decisions of this State has convinced us that the plaintiff offered no substantial evidence authorizing submission of the case to the jury, and

that plaintiff's evidence was not helped out by evidence offered by the defendant.

Many pages of the record are filled with testimony tending to show that insured appeared to be in ordinarily good health during the few weeks' preceding his death, as well as before that time, and that he was active and able to work, played golf and climbed two flights of stairs frequently without apparent difficulty or distress, and that there was nothing in his appearance or actions to indicate that he was not in good health for a man of his age. Evidence to the contrary appears by defendant's witnesses, and some of the plaintiff's witnesses threw doubt about his good health to a certain extent. There was ample evidence from these lay witnesses that he appeared reasonably vigorous and healthy.

However, the uncontradicted testimony of the physicians who held or witnessed the two autopsies (part of whom were called as witnesses by plaintiff) is to the effect that insured was not a healthy or vigorous man. With one voice these physicians agreed to the presence in his body of seriously diseased conditions. It is certain he was suffering from chronic Bright's disease and arterio-sclerosis in an advanced stage, with corresponding enlargement of the heart muscles. It is also shown beyond question that death was caused by cerebral hemorrhage. In spite of the testimony touching the appearance of insured given by lay witnesses, there can be no doubt that he was a victim of at least two deadly maladies.

The vital question for decision by the jury was whether the insured's death was caused by accident or was the result of disease. The burden was on plaintiff to show that insured received bodily injuries effected directly and independently of all other causes through external, violent and accidental means, which caused his death. There can be little doubt in this case that if an accidental fall of insured be conceded, it was not of such a nature as to cause his death independently of

the diseased condition. Appellant contends that under such a situation plaintiff cannot recover under the law of Illinois, which appellant claims is controlling. But we pass that issue without discussing or deciding it here, although it presents an interesting question for examination and determination.

There were no eye witnesses, or at least none testified, to the events which transpired from the time insured bade the Vaughans goodnight at the top of the stairs until he was found by Mr. Vaughan on his knees on the landing apparently trying to raise himself by the door knob. No sound of fall, outcry or other noise was heard by any witness. Part of the witnesses testified to the presence of a bruise or abrasion on insured's forehead and there is sufficient evidence on that point to justify a finding by the jury that such bruise did exist. When Mrs. Vaughan reached the scene he complained of his eye and his side, and so far as was shown these were the last words that he uttered.

From the presence of the bruise on his forehead the jury was doubtless authorized to infer a fall. Such was not a necessary conclusion, however, for the reason that the bruise was of such a superficial character that it might have been caused by insured bumping or rubbing his head against the door in attempting to pull himself up, or possibly by a fall in attempting to raise himself from the floor.

But from the inference of the fall drawn from the presence of the bruise, it does not necessarily follow that such fall was accidental rather than the result of the hemorrhage of the arteries of the brain. The physical condition of the insured was such that his fall could just as well have been caused by cerebral hemorrhage, conceding that such fall occurred. With the positive and uncontradicted evidence of the diseased condition of insured and that an actual cerebral hemorrhage took place, it is not proper to build upon the inference of a fall from the fact of a bruise the further inference that such fall was the result of accident rather than disease. The

fall can be as readily attributed to disease as to accident from the evidence before us and it devolves on plaintiff to show that it was due to accident.

Furthermore, if the jury be permitted to indulge the inference of a fall and the further inference that such fall was accidental, yet must an additional step *by inference* be taken and that is that such fall was the proximate cause of death of the insured. There is evidence that a fall might have caused a rupture of an artery of the brain and brought about the cerebral hemorrhage. None of the physicians undertake to testify as a fact that the hemorrhage *was* produced by the fall. They simply say that it *might* have been so produced. No evidence of injury to the outer covering of the skull or to the skull itself, or to the *dura mater* or to the membranes covering the brain or to the brain itself was found by the physicians. It is in evidence that a jar, not sufficient to injure these parts, could still be heavy enough to rupture a blood vessel in the brain of one in the condition of insured; or that the effort expended by him in attempting to avert a fall might produce the same result. But the conclusion cannot be avoided that a finding that such fall caused the death is, after all, an inference.

The courts of this State have many times declared that inference cannot be builded upon inference to establish a fact necessary to be proven in a case on trial. [Hamilton v. Railroad, 250 Mo. 714, l. c. 722; Swearingen v. Wabash Railroad, 221 Mo. 644, l. c. 659; Yarnell v. Kansas City Railroad, 113 Mo. 570, l. c. 579; Glick v. Kansas City, Ft. Scott & Memphis Ry. Co., 57 Mo. App. 97, l. c. 105.]. The above are negligence cases. The rule applies to any sort of case where a definite and ultimate fact must be found as a basis of recovery. It has frequently been applied in suits on accident policies, as for example, Wright v. United Commercial Travelers, 188 Mo. App. 457; Atherton v. Railway Mail Assn., 221 S. W. 752. Further citation of authority is useless. We find no contrary authority on the proposition that inference cannot be piled on inference to prove a fact.

Plaintiff cited a number of cases where there were no witnesses to the accidental character of the injury, but in all such cases, so far as we understand them, the fundamental fact of injury or fall was clearly shown by direct proof or the strongest kind of circumstances. In Fetter v. Fidelity & Casualty Co., 174 Mo. 256, there was no question that insured fell against a table. The issue was whether that fall or his diseased condition caused his death. In Goodes v. United Commercial Travelers, 174 Mo. App. 330, a stool slipped and caused insured to fall. Such fall was heard by his wife. Blood flowed from his nose and ears immediately. In MacDonald v. Railway, 219 Mo. 468, the question at issue was whether the death of the deceased was due to accident or disease. The accidental injury was clearly shown. It was due to the wreck of a grip car. In Greenlee v. Casualty Co., 192 Mo. App. 303, deceased rose from his bed and went into the bath room and his wife heard him fall and groan and he stated he slipped and fell. It was not necessary in that case to infer the fall and that it was due to accident rather than the disease of meningitis with which deceased was afflicted. In Lamoreux v. Ill. Commercial Men's Assn., 212 Ill. App. 263, the marks on the body, the position of the body with reference to the automobile, and other facts, showed circumstantially, but well nigh conclusively, that deceased was cranking his automobile, and while doing so was struck by the crank in attempting to start the engine. The jury was authorized to find as a fact that the mark on the body was caused by the crank. Numerous other causes on this point are cited by plaintiff, but nothing can be accomplished by discussing them further.

Counsel say in their brief that: "There is direct proof of the fall and its effect. The inference of the accidental character of the fall is properly based upon all of the circumstances preceding, accompanying and following Mr. Phillips's fall on the stairway. The accidental character of the fall is proved by circumstantial evidence, as it is necessary to prove many facts in the

trial of cases where direct evidence is not available. Proof by circumstantial evidence is not mere presumption.''

We are unable to agree with plaintiff that there is direct proof of the fall. There is no proof whatever on this point except the evidence of the bruise on insured's forehead. Complaint as to the eye and side does not exclude the hemorrhage as the cause of the fall. It is true that "proof by circumstantial evidence is not mere presumption." But that would only be true where such circumstances clearly pointed to the accidental character of the fall and tended to exclude the theory that it resulted from a stroke of apoplexy. The advanced stage of the sclerotic condition of insured's arteries, the undisputed evidence of cerebral hemorrhage causing death, the positive proof that there was not the slightest evidence of external violence causing any injury to skull or brain covering, argues just as strongly, to say the least, that insured's fall, if he did fall, was caused by disease, as that it was caused by accident. That such fall was caused by accident is speculation. It certainly is nothing more than mere inference.

It appears that there was no substantial evidence to establish the essential facts that there was a fall, that such fall was accidental, and that such fall, or the efforts to avert the same, caused the insured's death. The proof having failed at this point, there was no issue of fact to submit to the jury, and the defendant's demurrer to the evidence should have been sustained. Let the judgment of the trial court be reversed. All concur.