MARY C. FULTON, RESPONDENT, v. KANSAS CITY LIFE INSURANCE COMPANY, APPELLANT.—148 S. W. (2d) 581.

Kansas City Court of Appeals. January 27, 1941.

*Johnson & Bacon* and *McAllister, Humphrey, Pew & Broaddus* for appellant.

*Lamkin James* and *W. T. Bellamy* for respondent.

CAVE, J.—This is a suit on a life insurance policy issued by the defendant upon the life of Craven E. Fulton. The plaintiff is the beneficiary. The policy was first issued November 22, 1922, on a

five year term convertible plan. Near the end of that term, the insured converted the policy to a whole life policy and paid all the premiums required for that purpose. The annual premium under the whole life plan was $386.70, or if paid semi-annually, $201.08. The premiums were paid on or about due dates until the semi-annual premium, which was due in November, 1931. In making that payment, the insured, on December 26, 1931, paid in cash $96.08, and gave his note for the balance of $105, due March 23, 1932. This note was not paid when due and the policy was lapsed, but on or about May 24, 1932, insured applied for reinstatement· and after proper investigation, the policy was reinstated, and all payments which were then due were made as of May 22d. The insured was notified that there was a semi-annual payment due on the premium as of May 22, 1932, and that this payment should be made on or before June 22d. That semi-annual payment was not made, and on September 30, 1932, the defendant wrote the insured the following letter:

"Your above-mentioned policy is being continued in force under its non-forfeiture provisions as extended term insurance expiring mid-day December 14, 1939.

"Extended insurance is temporary protection on a term plan, good as long as it lasts, but with a probability of expiring and leaving you without insurance at a time when it will be needed most.

"Reinstatement to a premium paying basis would restore privileges of insurance for life or an endowment and all of the original benefits, and if you are interested a reinstatement plan will be submitted upon request.

"If you are not prepared to pay the amount due to complete reinstatement, it may be that we can charge the amount, or most of it, against the policy. Therefore, if you desire reinstatement, let us know how much you can pay now, or soon, if anything, .so that the proposition we will make may meet your requirements as nearly as possible.

"Extended Insurance does not give Total Disability protection.

It is admitted by the defendant that the above letter was written and mailed to insured and that he received it about October 1, 1932. There was no further correspondence between the parties and no action taken looking to reinstatement of the policy on any different basis. He died January 14, 1938.

The policy provided that, in case of default in the payment of subsequent premiums, after three annual premiums have been paid, insured would be entitled to certain surrender and loan values, paid up insurance, or extended insurance, in accordance with the number of annual premiums that have been paid, and if there was any indebtedness against the policies, this indebtedness should first be deducted. At the time of this default, and for a year or more prior thereto, the policy had been in the possession of the defendant.

The particular facts giving rise to this suit are as follows:

On or about February 23, 1931, the insured requested from the defendant a loan of $2,000, as provided by the terms of the policy, and within a short time, he executed his policy loan note payable to the company for that amount and deposited the policy as security and received the money on the loan. The interest on this loan was paid to November 22, 1931. When the policy was reinstated as of May 22, 1932, as above mentioned, the cash surrender or loan value was $2438.45. The total amount of the loan, including interest on that date, was $2060, thereby leaving a cash value balance in the policy of $378.45, which amount was sufficient to purchase extended insurance for a period of one year and 128 days from May 22, 1932, as provided in the policy. However, in August, 1932, and after the semi-annual premium was not paid as of May 22, 1932, the defendant, in calculating the then cash value of the policy and the time for which it would extend the life of the policy, made a mistake and calculated that the life of the policy would be extended to "mid-day, December 14, 1939," and entered on its records in its office the time of such extension. On September 30, 1932, the company wrote the insured the above letter, advising him of the time such policy would be extended. This mistake was not discovered until after the death of the insured and the defendant had received proof of death on blanks furnished by it. Other facts will be discussed in the opinion.

Plaintiff's petition was in the usual form for suit on a life insurance policy. Defendant's answer admitted the issuance of the policy, that plaintiff was the named beneficiary, and that insured died January 14, 1938, then alleged that in truth and fact the policy expired on September 27, 1933, by virtue of the terms thereof, and pled the facts concerning the mistake heretofore mentioned, and prayed for a reformation of its records to show the true facts, and asked to be discharged. After the cause was tried and submitted to the court, the defendant amended its answer by striking out the prayer for reformation of its records, and that question is no longer in the case.

Plaintiff's reply, after admitting certain allegations concerning the insurance policy and the terms and provisions thereof for extended insurance in case of failure to pay premiums, pled in substance that under the terms and provisions of the insurance policy and of the policy loan note, it was the duty of the defendant to notify the insured when said policy would be terminated and cancelled, if it desired to cancel it by reason of having made a loan and the failure of the insured to pay the same; that the policy was not in possession of the insured and he had no knowledge or information of the time of its expiration other than the information furnished him by the defendant; that he relied on such representation, and permitted the extended insurance to be carried in accordance with the terms of such notice; that the insured was in good health and such financial condition that

he could have and would have reinstated said insurance policy before its expiration, had he not relied on the statement of the defendant; that if a mistake was made in calculating the time of the extended insurance, it was entirely the mistake of the defendant, and was not a mutual mistake.

A jury was waived and the cause was tried by the court. No request was made for special findings of fact or declarations of law other than defendant's demurrer offered at the close of the whole case. The court took the matter under advisement and in due time found the issues for the plaintiff and entered judgment for $7262.50. There is no dispute as to this amount, if the plaintiff is entitled to recover at all. Defendant appeals to this court; and urges but one point, which is:

"The trial court erred in not giving defendant's declaration of law that, under the law and the evidence in this case, plaintiff was not entitled to recover for the reason the statement, contained in defendant's letter of September 27th, 1932, to insured that the period of extended insurance expired December 14th, 1939, was only an admission and was conclusively known to have been a mistake, and there was no substantial evidence offered by plaintiff to sustain her plea of estoppel."

It is clear from the record that the alleged mistake was entirely the fault of defendant. It had in its possession the policy, the loan note and all other records and data concerning this matter, and made its own calculations, entered the result on its records, and advised the insured that his policy was being continued in force under its nonforfeiture provisions until "mid-day, December 14, 1939." The defendant admits in its brief that as the case is presented to this court, the question of "mutual mistake" is not involved. It contends that the letter of September 30, 1932, is nothing more than an admission against interest and as such may be explained away. [Citing: Kimball v. New York Life Insurance Co., 108 Atl. 921; Duncan v. Matney, 29 Mo. 368; Bailey v. American Life Insurance Company, 96 S. W. (2d) 903.]

Whether this letter be considered an "admission against interest," or as a direct representation of an existing fact, all the cases hold that under similar situations, facts may be presented which, if believed, would estop the defendant from escaping liability because of its mistake. From the issues made by the pleadings and the evidence in the case, that was the major question presented to the trial court and is now renewed before this court.

This cause having been tried by the court without a jury, and no declarations of law or findings of fact requested, we will sustain the judgment if the record discloses any substantial evidence or reasonable inferences therefrom to support it. [Gardner v. North

Kansas City Alfalfa Mills, 61 S. W. (2d) 375; Railroad Company v. Dillard, 43 S. W. (2d) 1036.]

This proposition of law is not controverted by the defendant. It asserts that the burden of proof of estoppel rests with the plaintiff and that she has failed to meet that burden; that there is no substantial evidence to support the judgment.

There is little, if any, dispute between the parties as to the basic legal requirements necessary to establish estoppel. The elements which are involved here have been announced by our Supreme Court as follows:

"A necessary element of estoppel is that the party urging it must have done or refrained from doing something to his prejudice while relying upon the conduct complained of." [Grafeman Dairy Co. v. Northwestern Bank, 315 Mo. 849, 288 S. W. 359, 368.]

To like effect is the ruling in the case of Fisher v. Ely & Walker Dry Goods Co., 46 S. W. (2d) 902, 1. c. 906. [See also American Jurisprudence, page 732, p. 84.]

The plaintiff pled in her reply, among other matters, that the insured "would have reinstated said insurance policy as a whole life policy, had he not relied on the statement of the defendant that his said insurance was effective and would protect him until December 14, 1939." The defendant propounds the question: "Where is there any evidence in the record to sustain that allegation?" and asserts that it cannot be done except by building inference upon inference. We will discuss that later in the opinion.

We have read the cases cited by the defendant which are similar to the facts in the case under consideration; they are—Ginsburg v. Eastern Life Insurance Company, 178 Atl. 378, 184 Atl. 348; Kentucky Home Life Insurance Company v. Kittinger, 90 S. W. (2d) 673. We have also read the cases cited by the plaintiff which are similar to this case. They are—Hetchler v. American Life Insurance Company (Mich.), 254 N. W. 221; Steele v. St. Louis Mutual Life Insurance Company, 3 Mo. App. 207; Matthews v. Mutual Life Insurance Company of New York, 271 N. Y. Supp. 321.

From a reading of those cases, there does not seem to be any very material difference in the general principles of law announced. The great differences are the facts or the rights sought to be enforced. It appears clear that each-case must be decided very largely upon the evidence in the particular case. The plaintiff here seeks to recover on the policy involved on the theory that the defendant is estopped by its actions to deny that the policy was in force at the death of insured.

A rule of law which has been adopted in principle by practically all of the courts, and which strikes at the heart of this case, is very well stated in the case of Steele v. St. Louis Mutual Life Insurance Company, *supra,* as follows:

"The fact that the representations of the company here relied upon were not made fraudulently, but were due solely to a mistake in computation, does not operate to prevent the raising of an estoppel. It is commonly held that, although the party making the representations was ignorant or mistaken as to the real facts, if he was in such a position that he ought to have known them, ignorance or mistake will not prevent an estoppel."

Therefore, keeping in mind the above principle, and the requirements demanded of the insured, as stated in the Dairy Company case, *supra*, will the facts in this case meet the tests?

We think there can be no question but that the insured relied, and had a right to rely, upon the representation made to him by the company in its letter of September 30th, that his insurance was extended until "December 14, 1939." The evidence is that at that time, and for more than a year prior thereto, the insured had not had in his possession his policy or a copy of it, or any other data or information from which he could calculate the time said insurance would be extended. He was a person unfamiliar with such intricate calculations. He would have no reason not to rely on the company's statement. Therefore, we have no doubt about the trial court correctly concluding that he relied upon the representation made by the company.

The next question is, did the insured, relying upon such representation, "act, or fail to act, to his detriment?" This is an essential requirement before estoppel applies. The evidence discloses that he applied for and purchased this policy in 1922, as a five year convertible term policy. When this term was about to expire, he exercised the privilege of converting the same to a whole life policy and paid the necessary premiums and charges therefor; this was done in 1927. Thereafter, he continued to pay the premiums at about the time they were due, until a semi-annual premium of $201.08 came due on November 22, 1931, and in December he paid that amount by delivering to the company in cash $96.08, and a premium extension note of $105, due March 23, 1932. When this note was not paid on March 23, 1932, the policy lapsed. But in May, 1932, the insured applied for reinstatement of the policy, furnishing the necessary proofs, and upon his paying all amounts due, the policy was reinstated by the company. The record further discloses that he did not have any other life insurance and did not thereafter apply for any other life insurance. He was about 61 years of age at the time of the reinstatement of this policy. He was a farmer, in good financial circumstances, his net worth being approximately $20,000, with credit at his bank. The evidence further discloses that he was in good health until 1937 and physically fit to be reinstated. There is no word of mouth evidence that the insured relied upon the representations made by the company and acted to his detriment; his lips are now

sealed; but it is not necessary that such be proven by direct evidence. On the contrary, such essentials may be inferred from all the facts and circumstances introduced in evidence. [Steele v. St. Louis Mutual Life Insurance Company, *supra*; Ste. Marie v. Wells, 93 Vt. 398; Hetchler v. American Life Insurance Company, *supra*; Ward v. Cameron (Tex. Civ. App.), 76 S. W. 240.] The insured in this case, by his actions, had shown every intention of wanting and intending to have life insurance; and while his premium payments were sometimes late, he would arrange to pay before losing the policy. It will also be noted that the letter sent him by the defendant, notifying him of the extended date, also advised that his insurance "was good as long as it lasted," which he had a right to believe was until December 14, 1939. The letter also advised him how he could have his policy reinstated.

The defendant stresses the statement the insured made to his wife in 1930 or 1931 to the effect that times were bad and he might quit paying his premiums; but the evidence shows that one or two years after he made such statement, he went to the trouble and expense of having the policy reinstated. It would seem such an act would show a determination to continue the policy in effect and protect his wife, certainly in the face of the fact that he had no other life insurance.

The defendant quotes at length from the Ginsburg case, *supra*. An examination of that case demonstrates that the general principles of law of estoppel involved in this case are acknowledged, but the facts in the Ginsburg case were such that the court denied the relief sought. It was shown that Ginsburg was insolvent, mentally depressed and had attempted to commit suicide near the time of defalcation in the payment of premium and, as a matter of fact, did commit suicide some months later. In a final analysis, the court in that case concluded that if Ginsburg had reinstated his policy, it would have been a fraud upon the company because of his suicidal intentions and therefore could not have been enforced. We do not believe the decision in the Ginsburg case should control here, because of the wide differences in the facts.

The defendant also urges the decision of the Supreme Court of Kentucky in the case of Kentucky Home Life Insurance Co. v. Kittinger, *supra,* but apparently the issues there were not the same as in the case at bar. That court said:

"Plaintiff by her pleadings admitted the mistake and error relied on, but pleaded the *neglect* of defendant in discovering the mistake until after the death of the insured, which her counsel insisted had the effect to estop defendant from relying on it."

That certainly is not the situation here and is not the issue presented in this case. Further on in the opinion that court says:

"There is no claim here, by pleading or otherwise, that the insured, Rudolph Kittinger, was influenced in the slightest by the mistake relied on to do or abstain from doing any act whereby he was deprived of anything. The surmise that he may have taken out insurance following the period of his entitled extension on the policy sued on, but for the mistake, is a pure speculation. Such probable conduct on his part is neither alleged nor attempted to be proven."

That is not the situation in the present case, in fact, just the contrary is the issue presented here. It will further appear from an examination of that opinion that the insured had the policy in his possession at all times and had the *data* from which he could make the calculation of the extended insurance. Again, that is not the situation in this case. The insured here had not had the policy, or any other *data*, in his possession for more than a year, by which he could calculate the extended insurance. We think the cases relied on by the defendant are distinguishable from the case at bar.

The defendant also asserts that in order for the court to find for the plaintiff, he must build inference upon inference, which the law does not permit, citing the case of Phillips v. Travelers Insurance Co., 288 Mo. 175, 231 S. W. 947. There can be no dispute about that principle of law. But it is equally well established that "any number of inferences may be drawn in a given case so long as each has a factual foundation. The same fact may raise several concurrent inferences." [State ex rel. v. Hostetter, 139 S. W. (2d) 939, l. c. 941-42.] For a further discussion of this doctrine, see the case of Wills v. Berich's Delivery Company, 134 S. W. (2d) 125. When all of the facts and circumstances in this case are considered, we do not believe the trial court was guilty of violating the rule against building inference upon inference. The basic facts are present to justify holding that he relied on the representation and did nothing further about life insurance because thereof.

The defendant next contends that to uphold plaintiff's claim and decide that insured was entitled to the extended insurance, would be a violation of Section 5729, Revised Statutes Missouri 1929, our statute against discrimination in insurance policies, etc., and cites as authority the case of Blair-Baker Horse Company v. Railway Company, 200 S. W. l. c. 110; and Kimball v. New York Life Insurance Co., 126 Atl. 553. We have examined those cases and do not believe they apply to the facts in this case. Here, a mistake was made, without intention or fraud, by the company, and without knowledge or connivance or acquiescence by the insured. We do not believe that penal statute has any application to such a situation. Furthermore, this court in an opinion by SHAIN, P. J., held that a violation of the provisions of Section 5729 does not render the contract either illegal or void. [O'Maley v. Northwestern Mutual Life Insurance Company, 95 S. W. (2d) 852.] In that case, *certiorari* was denied by the Su-

preme Court of the United States. [299 U. S. 585. See also Landau v. New York Life Insurance Company, 199 Mo. App. 544, 203 S. W. 1003.] We rule this point against the defendant.

The defendant also contends that plaintiff is not entitled to recover because there was no consideration for the excess extension of time, and in support of that proposition, cites the cases of State ex inf. v. Mo. Utilities Co., 331 Mo. 337, 53 S. W. (2d) 401; Waugh v. Williams, 119 S. W. 226; and State ex rel. v. Hamilton, 260 S. W. 470, 471. We do not believe those cases apply to the facts in this case, because if the insured relied upon the representation of the defendant, and acted to his detriment by not reinstating his policy within the proper time, then there would be a sufficient consideration to sustain estoppel. This is in accord with practically all the decisions and textwriters where a similar situation has arisen.

In its brief the defendant discusses the opinions in the cases of New York Life Insurance Co. v. Gilbert, 215 Mo. App. 201, and Berry v. Continental Life Insurance Co., 224 Mo. App. 1207, which relate to the reformation of mistakes which have been endorsed on the policy; but as a preliminary to a discussion of those two cases, the defendant states that the question of mutuality of the mistake in this case has no bearing on the issues here presented; furthermore, it appears from the record that the defendant struck that request from the prayer of its petition. Therefore, it was not an issue in the case and we can see no reason for its discussion in the brief or in this opinion.

We have carefully read the cases cited in the briefs for the plaintiff and defendant, and appreciate that this is a close and difficult case on the facts, but we believe, and so hold, that there is sufficient evidence to support the findings of the trial court. Therefore, the judgment is affirmed. All concur.