Loys C. WILSON, doing business as Pres-
nell Hospital, Appellant,

v.

NEW YORK LIFE INSURANCE COM-
PANY, a Corporation, Appellee.

Loys C. WILSON, doing business as Pres-
nell Hospital, Appellant,

v.

ÆTNA LIFE INSURANCE COMPANY,
a Corporation, Appellee.

Nos. 15791, 15792.

United States Court of Appeals
Eighth Circuit.

Jan. 3, 1958.

Langdon R. Jones, Kennett, Mo.
(Jones & Jones, Kennett, Mo., on the
brief), for appellant.

Harry C. Blanton, Blanton & Blanton,
Sikeston, Mo., for New York Life Ins.
Co.

Allen L. Oliver, Richard D. Jones and
Oliver & Oliver, Cape Girardeau, Mo.,
for Aetna Life Ins. Co.

Before GARDNER, Chief Judge, and
WOODROUGH and VAN OOSTER-
HOUT, Circuit Judges.

GARDNER, Chief Judge.

Appellant brought action against the
New York Life Insurance Company on a
policy of life insurance on the life of
George R. Presnell. He sought to re-
cover on the double indemnity provisions
of the policy. He brought a like action
to recover on a policy issued by the Aetna
Life Insurance Company also insuring
the life of George R. Presnell in which
appellant was named beneficiary. In this
action too he sought to recover on the
double indemnity provisions of the poli-
cy. In each action the defendant insur-
ance company had already paid the face
amount of the policy. As the issues in
the two cases were substantially identical
they were consolidated for purposes of
trial. Trial by jury was duly waived and
the actions were tried to the court. We
shall refer to the parties as they ap-
peared in the trial court.

So far as here material the allega-
tions going to the questions of liability

were substantially the same in each case. In the complaint against the New York Life Insurance Company it was alleged that the double indemnity clause of the policy provided as follows:

"The Accidental Death Benefit specified on the first page hereof shall be payable upon receipt of due proof, on forms prescribed by the Company, that the death of the Insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means and occurred within ninety days after such injury and prior to the anniversary of this Policy on which the Insured's age at nearest birthday is 65 and prior to the maturity of this Policy; provided, however, that such Accidental Death Benefit shall not be payable if the Insured's death resulted, directly or indirectly, from (a) self destruction, whether sane or insane; (b) the taking of poison or inhaling of gas, whether voluntary or otherwise; (c) committing an assault or felony; (d) war or any act incident thereto; (e) engaging in riot or insurrection; (f) operating or riding in any kind of aircraft, whether as a passenger or otherwise, other than as a fare-paying passenger in a licensed passenger aircraft provided by an incorporated passenger carrier and operated by a licensed pilot on a regular passenger route between definitely established airports; (g) infirmity of mind or body; (h) illness or disease; or, (i) any bacterial infection other than that occurring in consequence of an injury on the exterior of the body effected solely through external, violent and accidental means."

It was alleged that the policy was in full force and effect and that the defendant breached the foregoing condition of the policy in that:

" * * * on or about August 1, 1953, the said George R. Presnell, then under the age of sixty-five years at his next birthday, was killed solely through external, violent, and accidental means as set out by and included within the terms of said policy; and said death was not caused in a manner within the exceptions contained in said accidental death benefit provision of said policy; and that said death occurred in Dunklin County, Missouri."

It was also alleged that plaintiff had performed all the conditions of said policy on his part to be performed and that defendants had paid the face value of the policies but had willfully, vexatiously and without justification refused to pay the additional indemnity provided in the sum of ten thousand dollars. The conditions of the policies as to liability for accidental death, so far as here material, were substantially the same in each case and the allegations of the complaint with reference to the breach of the conditions of the policies were substantially identical.

On the trial of the action the court determined the issues of fact and law in favor of the defendants, holding that the plaintiff had failed to sustain the burden of proof. Judgments of dismissal on the merits were thereupon entered. Two days before the entry of these judgments plaintiff interposed a motion to open judgment if one had been entered, amend findings of fact or make new findings and conclusions, and direct the entry of a new judgment, if one had been entered, or in the alternative to grant a new trial. The consolidated action was tried before Judge Rubey M. Hulen and he completed the trial by making findings of fact and conclusions of law and entering judgments of dismissal. After plaintiff filed his motion Judge Hulen departed this life and the motion of plaintiff was heard by a successor judge, Judge Roy W. Harper, who, after hearing, denied the post-trial motion in all respects.

Plaintiff in seeking reversal in effect challenges the sufficiency of the evidence to sustain the court's findings and judgments.

■ The burden of proof to prove that the insured came to his death directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means rested on the plaintiff. It was not incumbent upon defendants to prove the negative. Jones v. Mutual Life Ins. Co. of New York, 8 Cir., 113 F.2d 873; Massachusetts Protective Ass'n v. Mouber, 8 Cir., 110 F.2d 203; Svenson v. Mutual Life Ins. Co. of New York, 8 Cir., 87 F.2d 441; Murphy v. Western & Southern Life Ins. Co., Mo.App., 262 S.W.2d 340; Caldwell v. Travelers' Ins. Co., 305 Mo. 619, 267 S.W. 907, 39 A.L.R. 56; Phillips v. Travelers' Ins. Co., 288 Mo. 175, 231 S.W. 947. In Jones v. Mutual Life Ins. Co. of New York, supra, which was governed by the laws of Missouri, in referring to the question of the burden of proof it is said:

"The burden of proof was upon the plaintiff. The most favorable view that might be taken of the evidence would be that death might have occurred either from an accidental fall or disease. If from disease there was no liability, and where the evidence is circumstantial and it appears that injury may have resulted from one of two causes, for one of which but not for the other the defendant is liable, then the plaintiff cannot recover because this leaves the matter to conjecture." [113 F.2d 875.]

Judge Hulen after hearing all the evidence, among other things, found that:

"Where death could have resulted from one of two causes, under one of which defendants would be liable and the other they would not, the Court cannot speculate or guess as to the cause of death and fix liability by such process. Only by guess and speculation could this Court reach a conclusion as to the cause of death in this case."

The court further found that:

"The result is that the Court is left in a position of being unable to determine, with any degree of probability, what caused the death of Dr. Presnell.

"Plaintiff's cases must fail for failure to carry the burden of proof.

"Were we permitted to speculate, it might be surmised that the deceased did fall, and as a result of the fall his death resulted. But no such result can be reached by reasonable deductions from substantial evidence."

■ The findings of the court are presumptively correct and will not be set aside unless clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.; Arena Company v. Minneapolis Gas Company, 8 Cir., 234 F.2d 451; Sherman Inv. Co. v. United States, 8 Cir., 199 F.2d 504; O'Malley v. Ames, 8 Cir., 197 F.2d 256; Peterson v. Denevan, 8 Cir., 177 F.2d 411. This was a jury-waived case tried by the court. The defendants were the prevailing parties and, hence, we must take that view of the evidence most favorable to them. They are entitled to the benefit of all favorable inferences which may reasonably be drawn from the facts proven and if, when so viewed, there was substantial evidence to sustain the findings then the judgments may not be reversed by this court unless against the clear weight of the evidence, or unless influenced by an erroneous view of the law. Cleo Syrup Corp. v. Coca-Cola Co., 8 Cir., 139 F.2d 416.

With these rules in mind we turn to a consideration of the evidence. The insured, George R. Presnell, at and for many years prior to his death was a physician and surgeon specializing in surgery. He had been married three times, was twice divorced and at the time of his death an action for divorce by his third wife was pending. The evidence showed that he was at the time of his death an alcoholic and at various times prior thereto had been a drug addict. There was evidence that he had taken a nitroglycerin pill—an indication of heart ailment—about a month before his death. His death is presumed to have occurred on or about July 30th or

31st, 1953. The surrounding circumstances and physical facts bearing upon the probable cause of his death are as follows:

His body was found late in the afternoon on Monday, August 3, 1953, in his bedroom in his home on Butler Drive in Kennett, Missouri. The body had apparently been dead for three or four days and was in a very bad state of decomposition. All the doors were closed and locked from the inside and the shades were drawn. It was a very hot season, the temperature being about one hundred degrees for a period of several days and only the fan of an air conditioner was turned on. The body had turned almost black, the mouth was open, the eyes were protruding and the skin had slipped. The insured had been last seen alive the previous Thursday afternoon and evening. His body was lying partly on the left side and partly on his stomach with the left side of his head and forehead touching the carpet alongside and parallel to the side of his bed which had apparently been occupied. His head was about a foot beyond the foot of the bed with his face turned toward the bed and one arm extending toward and partly under the bed. The body was in such condition that the town marshal, a witness for plaintiff, would not have recognized it as Dr. Presnell if it hadn't been in his home. His head and neck were swollen quite a bit; his face, ankles and legs were swollen and he was swollen quite a bit all over. The coroner stated that the body was swollen markedly, that his arms, legs and face were all markedly swollen and almost black, that the skin would slip badly when the body was moved, that he never saw a body in as bad a state of decomposition as the body of the deceased, and that the body was dressed only in a pair of undershorts and one sock. There was also found under the body a pair of trousers when the body was turned over. Disinterested witnesses testified that there was no evidence of any scuffle or any foul play. No autopsy was held until November 7, 1953, more than three months after the body was found.

It was the contention of plaintiff that there was an abrasion over the left eye and near the left temple of the deceased which he had received when he fell, striking his head either on the post of the bed or the floor, which wound and resulting concussion caused his death. The town marshal, a witness for plaintiff, testified that he noticed a few marks on the face of the deceased but that he didn't notice anything indicating any scuffle and he "did not observe any wounds about the body". On cross-examination he admitted that he had testified at the inquest that he found no signs of injuries or bruises on the head, body or any place on the deceased. The coroner, called as a witness for the plaintiff, testified, among other things, that there was an abrasion on his temple where his head had been lying. In answer to inquiry by the court he testified that there was a separation of the tissue, a skin slipping, in describing the wound, abrasion or bruise, that he believed it was the slipping of the skin, that the skin was broken, that it wasn't very deep, that it might have been a bruise or abrasion, that he wouldn't say exactly, that it looked like a cut, wound, abrasion or bruise but that he couldn't tell whether it looked like the skin was cut. This witness admitted that on August 27, 1953, he had signed a statement containing the following:

"An examination of his body in the home failed to reveal any cuts, abrasions, or other marks or evidence other than that spot mentioned on his forehead, which could have been caused by the pressure by laying there all that time."

A highway patrolman, testifying for plaintiff, said that he made a visual examination of the body for any wounds at the time it was found, that he found the skin broken over the left temple but didn't know whether it had broken before or after the insured's death. He admitted having testified at the coroner's

inquest that he didn't examine the skin closely enough to know whether the skin was broken or not. Plaintiff, himself a doctor, testifying in his own behalf, on direct examination testified that there was a laceration on the left temple between one and two inches long. He admitted on cross-examination, however, that in a statement signed by him August 28, 1953, he had said:

"From what I observed, it was impossible for me to determine the cause of his death. * * * The mark or scar on the forehead could have been more or less a result of his head resting on that spot or it could have been caused by a blow or fall."

The undertaker, called as a witness for plaintiff, testified that there was a light spot over deceased's left eye toward the temple or the face, that the skin had slipped some, that the body had been lying on that spot from the time of death until the time they turned it over. On cross-examination he testified that when they turned the body over it seemed to him that the pressure probably from the time the body had lain there had caused the skin to slip and that after a body was dead a few hours it didn't take much when you took ahold of the skin for the first layer of the skin to slip, that he thought that was what happened in this case, that when the body was turned over the layer of skin broke and slipped but it didn't separate and there was no gash that he could see, and that it was more like a skin slip. The testimony of the pathologist who performed the autopsy, testifying on behalf of plaintiff, said, inter alia, that there was an absence of any penetrating wound of any important structures and body cavities, that the absence of hemorrhages in any body cavities showed that there had been no hemorrhages in that area, that there was a marked absence of the usual amount of arteriosclerosis, that there was no obstruction to the respiratory system and that there was no fracture of the skull or hemorrhage in the brain. There was evidence that there was blood and vomit under and near the head of deceased. The coroner and the undertaker both testified in effect that an unembalmed body expels blood and vomit largely from the nose and mouth as a result of gasses formed within the body. There was evidence that there was some blood on a sheet extending down from the bed but there was also evidence that this part of the sheet had been under the head of deceased and had been pulled out. There was some expert testimony offered by plaintiff based upon the assumption "that there was a laceration or contusion or wound over the left eye and near the left temple of the deceased". In the absence of substantial evidence to show that there was such a laceration, contusion or wound this evidence was of little value.

Evidence produced by the defendants tended to show that the insured was a dissipated man, that he was a narcotic addict, a chronic alcoholic, that he had taken some treatment for heart condition, that he had from time to time been hospitalized for these conditions and that he had been drinking immediately prior to his death. They also introduced evidence tending to show that the alleged abrasion probably resulted from contact with the carpet for several days. A number of experts called by defendants testified, in answer to hypothetical questions based on the testimony, that in their opinion deceased died from natural causes rather than from bodily injury effected solely through external, violent and accidental means.

In referring to testimony produced by plaintiff we have pointed out its weaknesses. We have carefully considered all the testimony and, giving plaintiff's testimony full weight, it certainly is far from convincing that the insured met his death from external, violent and accidental means. Experts for the defendants testified that he died from natural causes or alcoholism. Certainly in this state of the record the court was warranted in finding:

"But taking the testimony of plaintiff as to cause of death at face

value, without examination of the weakness of the underlying base for such opinions, there was testimony offered by the defendants of equal if not more probative value that death was due to natural causes and not accidental."

It is to be noted too in passing that a successor judge reviewed these findings and refused to disturb them and we are of the view that the evidence abundantly sustains the judgments appealed from and they are therefore affirmed.